DA 08-0536

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 292

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

JAMES RALPH HENDERSHOT, III,

        Defendant and Appellant.

APPEAL FROM:      District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC-2003-091
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            William F. Hooks, Hooks & Wright, P.C., Helena, Montana

        For Appellee:

            Hon. Steve Bullock, Montana Attorney General, John Paulson, Assistant
Attorney General, Helena, Montana

            George H. Corn, Ravalli County Attorney, William E. Fulbright, Deputy
County Attorney, Hamilton, Montana

Submitted on Briefs:   July 8, 2009

Decided:   September 1, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 On September 16, 2008, James Ralph Hendershot, III (Hendershot) pleaded guilty to felony aggravated assault in the Twenty-First Judicial District Court. Prior to the entry of this plea, the District Court had denied Hendershot's motion to dismiss for lack of a speedy trial. Hendershot now appeals from the denial of his motion to dismiss. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On March 6, 2002, Hendershot was convicted of theft in the Twenty-First Judicial District Court. The District Court imposed a deferred sentence. On June 23, 2003, Hendershot was charged with felony aggravated assault, felony assault with a weapon, and misdemeanor partner or family member assault. Hendershot was convicted by a jury on the misdemeanor and felony charges on December 9, 2003. He was sentenced to 10 years with the Department of Corrections (DOC), with 5 years suspended. This sentence was to run consecutively to his sentence for felony theft, which he was serving at the time of trial. After sentencing, Hendershot appealed his conviction. On February 21, 2007, this Court reversed Hendershot's conviction and remanded his case to the District Court for a new trial. *See State v. Hendershot*, 2007 MT 49, ¶ 32, 336 Mont. 164, 153 P.3d 619.

¶3 Remittitur occurred on March 14, 2007. On March 16, the District Court appointed the Office of the State Public Defender to represent Hendershot. His counsel filed a notice of appearance on April 10, 2007. Hendershot's trial was scheduled for June 25, 2007, but then reset to September 17, 2007, due to a conflict in the court's calendar.

2

Defense counsel then filed a motion to vacate and continue Hendershot's trial until after a September 24 trial in federal court.[1] The District Court granted the motion, resetting the trial for December 3, 2007.

¶4 After Hendershot's conviction in federal court, his counsel moved to vacate and continue the trial until after Hendershot's sentencing in federal court on December 23, 2007. The motion was granted and Hendershot's trial was reset for March 17, 2008. On March 10, 2008, Hendershot filed a motion to dismiss the misdemeanor and two felony charges for lack of a speedy trial. In response, the District Court vacated the trial date, and subsequently reset the trial for June 23, 2008. The motion was fully briefed by May 12, 2008, with neither party requesting a hearing on the matter. The District Court denied the motion on May 21, 2008.

¶5 On June 23, the trial date was once again reset, this time for September 29, 2008. On September 16, Hendershot entered into a plea agreement with the State. Hendershot pleaded guilty to one felony count of aggravated assault, and reserved his right to appeal the denial of his motion to dismiss for lack of a speedy trial. Hendershot was sentenced to DOC for a period of 10 years, with 5 suspended. This sentence was to run concurrently with his sentence for felony theft and his federal sentence.

¶6 Hendershot now appeals the denial of his motion to dismiss for lack of speedy trial. We state the issue presented by Hendershot's appeal as follows:

---

[1] Hendershot was subsequently convicted of fraud in federal court. He was sentenced to 2 concurrent 16-month sentences, followed by three years of supervision.

¶7    *Did the District Court err in denying Hendershot's motion to dismiss for lack of a speedy trial?*

## STANDARD OF REVIEW

¶8    We review the factual findings in support of a district court's decision regarding a speedy trial claim to determine if they are clearly erroneous. *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Ariegwe*, ¶ 119. We review a district court's conclusions of law de novo to determine whether the court's interpretation and application of the law is correct. *Ariegwe*, ¶ 119.

## DISCUSSION

¶9    In *Ariegwe*, we set forth a four-factor test for courts to utilize when analyzing a motion to dismiss for lack of a speedy trial. We summarized this test in *State v. Billman*, 2008 MT 326, 346 Mont. 118, 194 P.3d 58, as follows:

> We consider four factors when presented with a speedy trial claim: the length of the delay, the reasons for the delay, the accused's responses to the delay, and prejudice to the accused. *Ariegwe*, ¶¶ 106-111. We then balance the four speedy trial factors to determine whether the accused has been denied the speedy trial right. *Ariegwe*, ¶ 112. Each factor's significance varies based on the particular case's unique facts and circumstances. *Ariegwe*, ¶ 105.

*Billman*, ¶ 11.

¶10    Under Factor One, the district court determines the length of delay between accusation and date of trial or final disposition of the case. *Ariegwe*, ¶¶ 43,107; *Billman*,

4

¶ 17. The District Court concluded here that the interval between remittitur on March 14, 2007, and the operative trial date of March 17, 2008, was 368 days. Under *Ariegwe*, a speedy trial claim is triggered if the delay is at least 200 days. *Ariegwe*, ¶ 107. Once the 200-day trigger date is met, Factor One of the *Ariegwe* analysis requires courts to determine the extent of the delay beyond this trigger date. *Ariegwe*, ¶ 107. The District Court determined that the delay beyond the trigger date was 168 days. Accordingly, the State was required to provide a particularly compelling justification for the delay and make a highly persuasive showing that Hendershot was not prejudiced by the delay; Hendershot's burden of proof, by contrast, was correspondingly lower. *Ariegwe*, ¶ 123.

¶11 Pursuant to Factor Two, the District Court was then required to identify each period of delay in bringing the accused to trial, attribute each period of delay to either the State or Hendershot, and then assign appropriate weight to each period of delay based on specific cause and culpability. *Ariegwe*, ¶ 124. The District Court attributed the first 187 days as institutional delay to the State. The District Court noted that institutional delay weighs less heavily than intentional delay. *See Ariegwe*, ¶ 68. The remaining 181 days of delay were all attributed Hendershot as a result of his motions to continue the state court proceedings until after the adjudication of charges against him in federal court.

¶12 The District Court then evaluated the gradations of culpability for these delays. *See Ariegwe*, ¶¶ 71, 108. As argued by the State and noted in the District Court's order, additional felony convictions could have been damaging to Hendershot in his federal trial, and could have had a detrimental effect on his sentencing under federal sentencing guidelines. Accordingly, while the District Court weighed the State's delay lightly

5

because it was institutional in nature, it determined that Hendershot's culpability weighed more heavily against him because he sought to delay his trial on state charges until after his sentencing in federal court. In *Ariegwe*, we explicitly recognized that delays caused by the accused to avoid being brought to trial or for tactical reasons would weigh more heavily against him or her than, for instance, would a delay caused by a missing witness. *Ariegwe*, ¶ 71.

¶13 Factor Three of the *Ariegwe* analysis requires courts to consider the accused's responses to delay of the trial. *Ariegwe*, ¶ 110. As the District Court noted explicitly in its order, this factor serves an important role by providing insight into whether the accused really wanted a speedy trial, and guides the reviewing court in weighing the other three factors in the analysis. *See Ariegwe*, ¶ 79. In considering this factor, the District Court noted that Hendershot made no response to the first delay (which was due to a conflict in the District Court's calendar), and that he in fact requested the continuances which resulted in the subsequent two delays. Furthermore, Hendershot waited until 7 days before trial to file his motion. The District Court rejected Hendershot's claim that he was unaware his counsel had sought the two continuances, and was therefore not bound by the actions of his counsel in requesting them. The District Court concluded that Hendershot obtained the continuances to delay his state trial until his federal charges and sentencing were resolved. The sum of this evidence led the District Court to conclude that Hendershot wished to delay his trial, and was not particularly interested in being brought to trial sooner. Accordingly, the District Court weighed this factor against Hendershot, and noted that this evaluation would serve as a

gauge of the weights that should be assigned to the other three factors when balancing them together. *See Ariegwe*, ¶ 110.

¶14    Turning to Factor Four, the District Court then considered whether Hendershot had been prejudiced by the delay. *See Ariegwe*, ¶ 86. The District Court noted that prejudice to the accused was to be evaluated in light of the following interests which the right to a speedy trial was designed to guard against: (1) oppressive pretrial incarceration; (2) the accused's anxiety and concern; and (3) the possibility that the defense will be impaired by dimming memories and loss of exculpatory evidence. *Ariegwe*, ¶ 88 (citing *Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 2193 (1972)). Regarding the first interest, the District Court observed that Hendershot was already serving time for other criminal offenses which he had not appealed, and that Hendershot presented no evidence of oppressive incarceration. Respecting the second interest, Hendershot did assert that his incarceration had caused a total breakdown in his health because the medical care available in the prison system was not equivalent to that available in the private sector. While the District Court was sympathetic to the anxiety caused by this situation, it nonetheless noted that the health care issue was not necessarily caused or exacerbated by the delay in his trial. Furthermore, the District Court noted that the speedy trial motion was not an avenue for pursuing grievances which are properly addressed through administrative channels or for otherwise attacking the inner workings of the prison system itself, nor was it sufficient for purposes of a speedy trial claim that the conditions of incarceration be disagreeable. *See Ariegwe*, ¶ 93. Finally, regarding the third interest, the District Court noted that Hendershot had failed to present any evidence

7

or claim that his defense had been impaired due to the delay in his trial. The District Court therefore concluded that the State made a highly persuasive showing that Hendershot had not been prejudiced by the delay in his trial.

¶15 After considering all the factors separately, the District Court then balanced the factors based on the facts of the case and the weights assigned to each factor. *Ariegwe*, ¶ 153. The District Court concluded that Factors Two, Three, and Four weighed against Hendershot, and outweighed Factor One, which favored Hendershot. Thus, the District Court concluded that Henderson had not been deprived of his right to a speedy trial.

¶16 Hendershot argues that the District Court erred in denying his motion. First, he asserts that the District Court erred in computing the total period of delay from the filing of remittitur to the date of trial. Hendershot notes that when the District Court denied the motion, his trial was actually set for June 23, 2008, not March 17, 2008. Hendershot asserts that the June date should have been utilized in the District Court's calculations. Accordingly, Hendershot claims that the correct interval between the date of remittitur and date of trial was 467 days. Additionally, Hendershot notes that his trial date was continued again after this date had been set, with his guilty plea finally entered on September 16. Thus, an additional 85 days elapsed, bringing the total interval between the filing of remittitur and date of his final disposition to 552 days. Consequently, Hendershot asserts that under *Ariegwe* and *Billman* the actual delay beyond the 200-day trigger was 352 days, and not the 168 days relied upon by the District Court.

¶17 Turning to Factor Two, Hendershot argues that the District Court erred in attributing 181 days of delay to him based upon the filing of continuances by his defense

8

counsel. Hendershot claims that he was never consulted regarding such motions and did not approve of them. Although he admits the District Court file did not contain the letters he ostensibly sent to the court objecting to the continuances, Hendershot asserts that the lack of such evidence does not detract from the truth of his present assertions. Hendershot claims that he was in federal custody during the time these motions were filed, and cannot be held responsible for the delay under these circumstances. Because he had no knowledge of the continuances and asserts he never waived his right to a speedy trial, Hendershot argues the District Court erred in its analysis of Factor Two in apportioning this delay to him.

¶18 Under Factor Three, addressing Hendershot's responses to the delay, he asserts that the District Court erroneously weighed this factor against him, basing its decision solely on the fact that he did not file his motion until 7 days before trial.

¶19 Finally, Hendershot asserts the District Court erred in weighing Factor Four, arguing that the fact of his previous incarceration and pre-existing health problems were not properly considered by the District Court. Accordingly, Hendershot argues that the District Court erred in weighing and balancing the *Ariegwe* factors and that his motion to dismiss for lack of a speedy trial should have been granted.

¶20 The State urges us to affirm. Regarding the overall length of the delay, the State asserts that Hendershot himself calculated the speedy trial interval as 368 days in his motion to dismiss, and did not then suggest the length of delay which he now posits on appeal. The State argues that the new figure amounts to a change in legal theory which should not be considered by this Court for the first time on appeal. The State concedes

that in *Billman* and *Ariegwe*, we stated that the speedy trial interval runs to the scheduled trial date or date of the case's disposition. In this case, however, the State asserts that Hendershot should be bound by the length of delay which he presented in his motion to dismiss. In this regard, the State notes that additional time invariably elapses while a court receives briefing on a speedy trial motion and/or after it rules on the motion; as a consequence, a district court cannot predict with certainty at the time it rules on the motion what the ultimate date of disposition will actually be.

¶21 The State argues that this Court should not be required in its analysis on appeal to readjust the length of delay relied upon by the District Court to reflect delays elapsing after the motion was decided, but before final disposition of the case. The State argues that if a defendant believes his right to a speedy trial has been violated by delays occurring after his motion is denied, the proper vehicle would be to renew the motion prior to final disposition. Because Hendershot never renewed his motion, the State argues he should be held to the 368-day calculation for the length of delay. Alternatively, even if the interval were expanded to 552 days, the State argues that such an extension would not fundamentally alter the *Ariegwe* analysis. It maintains that the additional delay would be attributable to Hendershot due to the filing of the motion to dismiss 7 days prior to trial and the necessity of a continuance at that point.

¶22 Regarding Factor Two, the State asserts that the 181-day delay was properly attributable to Hendershot based on the actions of his attorney. While the State concedes that Hendershot never formally appeared in court to waive his right to a speedy trial, it asserts that absent egregious circumstances, defendants are bound by the conduct of their

10

attorneys. In this case, no such circumstances were present, and the record indicates that Hendershot obtained a tactical advantage in his federal proceedings by having his trial before the District Court delayed. The State notes that Hendershot did not contest the existence of this benefit before the District Court, and it was not conjecture for the District Court to consider these facts in analyzing Hendershot's motion.

¶23 Under Factor Three, addressing Hendershot's responses, the State argues that the District Court's findings are well-supported by the record and that Hendershot's sole response consisted of the filing of the speedy trial motion 7 days before trial.

¶24 Under Factor Four, the State asserts that Hendershot has not challenged the District Court's conclusion that he presented no evidence or argument that his incarceration was oppressive. Similarly, the State argues that Hendershot acknowledges that his health conditions pre-dated the delay in his trial. Additionally, the State asserts that Hendershot's claims that he was unable to communicate and work with his counsel prior to trial are based on a pro se document he filed after the District Court had already ruled on his motion, and that such arguments should not be considered.

¶25 Accordingly, the State asserts that the District Court did not err in either weighing or balancing the *Ariegwe* factors and in concluding that Hendershot's right to a speedy trial was not denied.

¶26 We turn now to the District Court's analysis. First, regarding the length of the delay, Hendershot is technically correct in asserting that the interval should run from the date of remittitur to the date of final disposition. *See Ariegwe*, ¶ 43; *Billman*, ¶ 17. Thus, as a purely factual matter, the total delay from remittitur until date of disposition here was

11

552 days, and the length of delay beyond the 200-day trigger date was 352 days. Nonetheless, it is undeniable that when the District Court issued its ruling, it could not forecast the date upon which Hendershot's case would ultimately be resolved.

¶27 What the District Court did know when it ruled on the speedy trial motion was that a trial date had been set for June 23, 2008. Thus, the District Court should have used this date, and not March 17, 2008, as the date of trial. Using this figure, the total interval between remittitur and date of trial was 467 days; thus, the length of delay beyond the 200-day trigger should have been 267 days, and not the 168 relied upon by the District Court.

¶28 The length of delay plays a significant role in the speedy trial analysis. As we stated in *Ariegwe*,

> The significance of this . . . determination is twofold. First, the presumption that pretrial delay has prejudiced the accused intensifies over time. Thus, the further the delay stretches beyond the trigger date, the stronger is the presumption under Factor Four that the accused has been prejudiced by the delay. Second, the State's burden under Factor Two to justify the delay likewise increases with the length of the delay. Thus, the further the delay stretches beyond the 200-day trigger date, the more compelling the State's justifications for the delay must be under Factor Two.

*Ariegwe*, ¶ 107.

¶29 In *Areigwe*, the Court stated that "the interval between accusation and trial runs not to the date on which the accused's speedy trial motion is considered by the court but, rather, to the scheduled trial date or the date on which a plea of guilty is entered, whichever date represents the date of disposition of the case." *Ariegwe*, ¶ 43; *accord Billman*, ¶ 17 ("This statement [from *Ariegwe*] remains true when a court denies a speedy

trial motion because the denial does not dispose of the case."); *see also Billman*, ¶¶ 58-62 (Nelson, J., specially concurring). However, the application of such a rule presents unique problems in the post-*Ariegwe* universe.

¶30     Under *Ariegwe*, the length of delay provides a lens through which the merits of a speedy trial claim are evaluated. Prior to *Ariegwe*, the length of delay simply triggered the speedy trial analysis without determining the burden of proof. *See Ariegwe*, ¶ 50 (noting that in speedy trial cases prior to *Ariegwe* the "intensifying presumption of prejudice" under Factor One had not been considered). If a district court made an erroneous finding with respect to the length of delay, then that finding could be revised without necessarily upsetting the entire speedy trial analysis. Under *Ariegwe,* however, every day that the delay is extended triggers an intensifying presumption of prejudice. Therefore, delays occurring after the court's ruling on the speedy trial motion but before ultimate disposition could arguably render the court's speedy trial analysis—conducted at one point in time on the continuum—invalid. In the case sub judice, for instance, the court used a present-day calculus for its speedy trial analysis, but by the time the case was ultimately resolved by plea, additional delay had occurred, thus outdating the analysis *and* arguably increasing the presumption of prejudice. In this way does the *Ariegwe* calculus present a conundrum not present in pre-*Ariegwe* cases.

¶31     The State asserts that arguing for a greater length of delay for the first time on appeal constitutes a change in legal theory. While we do not agree that the *theory* is different, the analysis is certainly different. As we have stated on many occasions, " '[a] party may not raise new arguments or change its legal theory on appeal because it is

13

fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider.' " *State v. Morrison*, 2008 MT 16, ¶ 10, 341 Mont. 147, 176 P.3d 1027 (quoting *State v. Adgerson*, 2003 MT 284, ¶ 12, 318 Mont. 22, 78 P.3d 850). Since the length of the delay fixes the burden of proof under *Ariegwe*, it would be unfair for this Court to revise the presumption of prejudice on appeal to account for additional elapsed time, and then fault the District Court for failing to utilize a burden of proof which it was not given the opportunity to consider.

¶32 We agree with the State that *revised* speedy trial arguments are properly presented in the district court and not before this Court for the first time on appeal. If a motion to dismiss for lack of a speedy trial is denied, and subsequent additional delays raise further speedy trial concerns, then a defendant may file a renewed motion to dismiss in district court, citing specifically the additional delay which was not addressed in the previous motion and order. However, we conclude for the foregoing reasons that a defendant may not argue on appeal for a revised length of delay different from that relied upon by the district court at the time the motion to dismiss was decided, unless the court's determination was, at the time made, clearly erroneous or based on incorrect conclusions of law. To the limited extent that *Ariegwe* and its progeny would suggest otherwise, we take this opportunity to clarify those cases with respect to this issue. *See e.g.*, *Ariegwe*, ¶ 43; *Billman*, ¶ 17.

¶33 In this case, Hendershot has demonstrated that the District Court's determination regarding the length of delay was clearly erroneous, based upon the record then before the court. At the time the District Court ruled on the motion, the trial date was actually

14

set for June 23, 2008, 267 days beyond the 200-day trigger date. Thus, the correct interval was 98 days longer than the one utilized by the District Court under Factor One. However, Hendershot has failed to demonstrate how the additional delay under Factor One would alter the analysis employed by the District Court. Indeed, if the District Court had correctly fixed the date of disposition as June 23, 2008, instead of March 17, the additional 98 days of delay would have been clearly attributable to Hendershot under *Ariegwe* because he filed his motion to dismiss 7 days before trial, thus forcing the District Court to delay the trial further in order to give the motion adequate consideration. *See Ariegwe*, ¶ 116. As a result, Factor Two would weigh against him even more. Moreover, the District Court had already concluded that the State was required to provide a particularly compelling justification for the delay. Under *Ariegwe*, this puts a very high burden of proof on the State. *See Ariegwe*, ¶ 107. Providing additional time for the District Court to consider the motion filed by Hendershot does not make the State's burden any more compelling. Thus, the District Court reached the right result regarding the burden of proof under Factor One, even though it did so utilizing the wrong date. We will affirm a district court decision when it reaches the right result, even though its reasoning is not entirely correct. *Buhmann v. State*, 2008 MT 465, ¶ 91, 348 Mont. 205, 201 P.3d 70. Thus, we conclude the District Court did not err in its analysis of Factor One.

¶34 The same is true with respect to Factor Four. While the District Court should have analyzed this factor using the additional 98 days of delay, Hendershot has failed to

demonstrate how this increase has tipped this factor in his favor, especially given the fact that he was already incarcerated on charges unrelated to the instant appeal.

¶35 We similarly conclude that the District Court did not err in its analysis of Factors Two and Three. Hendershot has simply failed to demonstrate that any of the findings in support of these determinations were clearly erroneous, or that the conclusions of law in support thereof were incorrect. While Hendershot argues that the District Court should have come to different conclusions vis-à-vis each of these factors, he has simply not met his burden of proof on appeal.

¶36 Moreover, we conclude that the District Court did not err in balancing and weighing the four factors in the final analysis. The District Court concluded that Factor One weighed in Hendershot's favor, while the other three factors weighed in favor of the State. We agree. Thus, we conclude that the District Court did not err in balancing the factors as it did and denying Hendershot's motion.

## CONCLUSION

¶37 The District Court did not err in denying Hendershot's motion to dismiss for lack of a speedy trial. Hendershot's conviction is therefore affirmed.

/S/ PATRICIA O. COTTER

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE

16