DA 09-0318

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 20

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

ROXANNA LEE SHEPARD,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twentieth Judicial District, In and For the County of Sanders, Cause No. DC 03-39 Honorable Deborah Kim Christopher, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          William F. Hooks, Attorney at Law; Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Tammy K Plubell, Assistant Attorney General; Helena, Montana

          Colleen Magera, Sanders County Attorney; Thompson Falls, Montana

                   Submitted on Briefs:  December 10, 2009

                               Decided:  February 3, 2010

Filed:

             _____
                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Roxanna Lee Shepard (Shepard) appeals the Order of the District Court for the Twentieth Judicial District, Lake County, denying her motion to withdraw her guilty pleas. We affirm.

¶2 Did the District Court err by denying Shepard's motion to withdraw her guilty pleas based upon an alleged breach of the plea agreement?

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On August 7, 2003, Shepard was charged with multiple offenses, including deliberate homicide, burglary, and aggravated kidnapping, arising out of her involvement in the murder of Steven Ash and attempted crimes against Caleb Russell. In April of 2004, Shepard executed and filed an Acknowledgement of Rights and Plea Agreement which she had entered into with the State. Pursuant to this agreement, Shepard appeared before the District Court and entered guilty pleas to the deliberate homicide and burglary charges, and the State moved for dismissal of the remaining charges. The agreement provided that the State was "free to recommend any sentence permitted by law . . . excluding a sentence of death," except that the State agreed to recommend that any sentence imposed for the burglary offense would be served concurrently with the sentence imposed for deliberate homicide.

¶4 Prior to sentencing, Assistant Attorney General John Connor (Connor), who was assisting in the prosecution of the case, informed Shepard's defense counsel that he intended to seek imposition of a life sentence, but he did not intend to recommend a

2

parole eligibility restriction. The plea agreement contained no commitment from the State regarding a parole eligibility restriction, although it acknowledged that the court could impose one. Consistent with his verbal assurance, Connor stated at the sentencing hearing that the "State does not recommend that there be a no parole restriction placed on [Shepard's] sentence . . . ." However, in addition to imposing a life sentence for the deliberate homicide offense, the District Court also made Shepard ineligible for parole.

¶5 Shepard appealed to this Court, asserting that her sentence was illegal because the parole restriction violated her constitutional and statutory rights. We affirmed the District Court's imposition of the parole restriction. *State v. Shepard*, 2006 MT 251N. Shepard then petitioned the Sentence Review Division for review of her sentence. At a hearing before the Sentence Review Division on October 5, 2007, Shepard, through counsel, described the factual circumstances surrounding her sentencing and argued that the District Court's parole ineligibility condition made her sentence excessive, unnecessary, and inappropriate. Robert Zimmerman (Zimmerman), who was Sanders County Attorney at the time of Shepard's sentencing, appeared before the Division as a witness. He contradicted the factual background given by Shepard and opposed Shepard's request that the parole restriction be removed from her sentence. Shepard objected to Zimmerman's statement and argued that it constituted a breach of the plea agreement because it ran counter to Connor's commitment not to recommend a restriction on Shepard's parole eligibility. In its Order of October 25, 2007, the Division overruled

3

Shepard's objection, declined to remove the restriction, and determined the sentence should stand as imposed by the District Court.

¶6    On November 24, 2008, Shepard filed a motion to withdraw her guilty pleas, asserting that Zimmerman's request that the Sentence Review Division leave Shepard's sentence as imposed constituted a breach of the plea agreement and that, therefore, her pleas were involuntary. On April 16, 2009, the District Court denied Shepard's motion. The court mentioned that the motion was untimely[1] and held that Shepard's challenge was essentially to the decision of the Sentence Review Division, that she made no argument that she did not obtain the benefit of her bargain under the plea agreement, and that the sentence became law of the case at the time of imposition and was beyond that court's power of review. Shepard appeals.

## STANDARD OF REVIEW

¶7    The standard of review for a district court's denial of a motion to withdraw a guilty plea is de novo. *State v. Brinson*, 2009 MT 200, ¶ 3, 351 Mont. 136, 210 P.3d 164 (citation omitted). Acknowledging that we have held that a district court's determination about whether a plea agreement was breached is reviewed for abuse of discretion, *State v. Rahn*, 2008 MT 201, ¶ 8, 344 Mont. 110, 187 P.3d 622 (citation omitted), Shepard nonetheless argues that a de novo review for correctness should be the appropriate standard in such cases. She argues that the abuse of discretion standard can be traced to

---

[1] The parties essentially agree that the District Court, although mentioning the timeliness issue, did not decide the motion on that ground. Thus, we do not take up that question. The State argues that we simply consider the time delay in determining the merits of Shepard's motion.

*State v. Sullivan*, 266 Mont. 313, 880 P.2d 829 (1994), which involved, not a plea agreement, but an evidentiary question, and that a de novo review would be consistent with this Court's review of civil contract cases. The State cites the same authority and argues for application of an abuse of discretion review of the District Court's conclusion that the agreement was not breached.

¶8 We agree with Shepard. We have held that a plea agreement is a contract and is subject to contract law standards. *State v. Hill*, 2009 MT 134, ¶ 49, 350 Mont. 296, 207 P.3d 307. Based upon facts as determined by the fact-finder, the question of whether a contract was breached is a question of law which we review de novo. That standard is likewise consistent with the standard of review for motions to withdraw plea, at issue in this case.

¶9 "We will affirm a district court decision when it reaches the right result, even though its reasoning is not entirely correct." *State v. Hendershot*, 2009 MT 292, ¶ 33, 352 Mont. 271, 216 P.3d 754 (citation omitted).

## DISCUSSION

¶10 ***Did the District Court err in denying Shepard's motion to withdraw her guilty pleas?***

¶11 As a threshold matter, the parties dispute whether the plea agreement prohibited the State from taking a position on parole eligibility. The State argues that the parole eligibility restriction "was clearly not part of the written Plea Agreement" and that "[i]t is certainly subject to debate whether John Connor's decision to share his proposed sentencing recommendation with defense counsel in advance of the change of plea

5

hearing rises to the level of an oral amendment to the written Plea Agreement." Shepard argues in reply that there was an unwritten "understanding" between the parties, which was communicated to the sentencing court, about the State not recommending a parole restriction. Further, Shepard argues that, in any event, the State took the position before the District Court within this proceeding that the understanding was part of the plea agreement, and should not be allowed to change its position on appeal.

¶12 It is well settled that "[a] party may not change its theory on appeal from that advanced in the trial court; nor may a party raise an argument for the first time on appeal." *State v. Anderson*, 1999 MT 60, ¶ 25, 293 Mont. 490, 977 P.2d 983 (citation omitted). We thus agree with Shepard. Given the position taken by the State before the District Court on Shepard's motion to withdraw her pleas, we conclude for purposes of this appeal that an unwritten understanding between the parties was reached prior to sentencing that the State would make no recommendation about parole eligibility as part of its sentencing recommendations under the plea agreement.

¶13 The State next argues that "a breach of plea agreement claim should not be viable after a judgment has become final, following a direct appeal of that judgment." Citing the statutes and rules governing final judgments, the State argues that Shepard's judgment became final in January 2007, and at that point "it was not possible for the State to breach the Plea Agreement, by which it had already abided." Shepard replies that this position is unsupported by authority and contends that the sentence review process "is essentially a continuation of the sentencing stage in the district court."

6

Shepard argues that "the [S]tate's agreement not to take a position with regard to a restriction on parole eligibility must be construed as extending to any review by the Sentence Review Division."

¶14     We disagree with the State's argument that the plea agreement had no viability, as a matter of law, following Shepard's judgment becoming final.  First, it is conceivable that an agreement could be negotiated which specifically restricts the State's actions before the Sentence Review Division or otherwise extends beyond the entry of judgment and appeal, and be a continuing obligation upon the State.  "[A] plea agreement is a contract between the State and a defendant and is subject to contract law standards." *State v. Rardon*, 2002 MT 345, ¶ 18, 313 Mont. 321, 61 P.3d 132 (citation omitted). Contract law principles require that "[w]here the contractual language is clear and unambiguous on its face, it is this Court's duty to enforce the contract as drafted and executed by the parties." *Felska v. Goulding*, 238 Mont. 224, 230, 776 P.2d 530, 534 (1989) (citation omitted).  Here, however, the plea agreement was drafted to unambiguously apply to the sentencing process before the District Court and that court's disposition of the case.  It did not contemplate later proceedings, and thus, the State did not violate an express provision of the plea agreement.

¶15     Secondly, it is also conceivable that the State, by arguing for a different or harsher sentence before the Sentence Review Division than it had agreed to, could undermine and therefore violate the plea agreement.  Prosecutors "'must meet strict and meticulous standards of both promise and performance' relating to plea agreements . . . ."

7

*Rardon*, ¶ 18 (citation omitted). Here, following Shepard's presentation before the Division, Zimmerman began his comments by stating "[a]s I stand here today listening to this, I was amazed how the facts of the case were glossed over and not brought up." He then detailed the facts of the crime, building to his conclusion that "[t]his was premeditated, planned." Shepard's counsel then objected, arguing that the State was limited to only referring to the facts contained in the affidavit in support of the Information and was bound by the plea agreement, and thus could not offer facts to defend the sentencing court's imposition of a parole restriction. Zimmerman then responded:

> I don't see it that way whatsoever. The facts are the facts and that was with both sides. The Court knew all of those facts based on the pre-sentence report, not only the affidavit that it had in front of it at the time. I guess the State did agree that we would recommend a life sentence and everybody was aware that the victim's family was going to recommend that the Court impose the no possibility of parole sanction. Everybody went into that with their eyes wide open knowing that that would happen. The State did go along with the plea agreement and we supported the plea agreement. And now we're here to support the judge's sentence. It's not violating the terms of the plea agreement whatsoever. We followed through with the plea agreement and that agreement ended at the time the sentencing took place. If you feel I'm wrong, I'll sit back down.

The Division overruled defense counsel's objection, and allowed Zimmerman to finish his comments, which he did briefly.

¶16 We do not believe Zimmerman's comments undermined or constituted a breach of the plea agreement. Shepard knew that the plea agreement was not binding upon the District Court and, following the State's recommendation to the District Court in accordance with the plea agreement, the District Court imposed a legal sentence.

8

Zimmerman was simply arguing to the Division that Shepard's sentence, as legally imposed, should be upheld. Moreover, a prosecutor is not required to sit idly by during a sentence review hearing if a defendant or counsel fails to accurately represent the record.

¶17 Having concluded that the State did not breach the plea agreement, Shepard's argument that the District Court erred in denying her motion to withdraw the guilty pleas becomes unsupported. Although Shepard points to errors in the District Court's analysis, we need not discuss these further, given our conclusion. Further, we "affirm a district court decision when it reaches the right result, even though its reasoning is not entirely correct." *Hendershot*, ¶ 33 (citation omitted).

¶18 Affirmed.

/S/ JIM RICE


We concur:


/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS