DA 13-0618

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 53N

WILLIAM M. WINDSOR,

        Plaintiff and Appellant,

   v.

SEAN BOUSHIE,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV 13-899
                Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            William M. Windsor, Self-Represented, Dallas, Texas

        For Appellee:

            Sean Boushie, Self-Represented, Stevensville, Montana

                        Submitted on Briefs:  January 29, 2014
                                Decided:  February 25, 2014

Filed:

           _____
                           Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 William M. Windsor, self-represented, requested a Temporary Order of Protection (TOP) in Ravalli County Justice Court on August 6, 2013. Windsor sought protection from an individual named Sean Boushie. As grounds for the TOP, Windsor alleged that Boushie had stalked, intimidated, and assaulted him. The Justice Court denied the TOP request, and Windsor appealed the denial to the Twenty-First Judicial District Court. After reviewing Windsor's TOP petition and the Justice Court's order, the District Court denied Windsor's appeal on August 13, 2013 (21st Jud. Dist. Ct. Cause No. SB 13-024).

¶3 Windsor also filed a separate TOP application directly in the Twenty-First Judicial District Court (21st Jud. Dist. Ct. Cause No. DR 13-144). No new information or facts were submitted or alleged with the application. Hence, finding no objective basis upon which to grant Windsor's separate TOP request, the District Court denied that request on August 13, 2013. The court incorporated by reference the entirety of its order dismissing the appeal in Cause Number SB 13-024. Windsor filed his notice of appeal with this Court on August 16, 2013. His appeal from the Twenty-First Judicial District Court has been docketed as Cause Number DA 13-0540.

¶4 Meanwhile, Windsor requested a TOP in Missoula County Municipal Court on August 6, 2013. Windsor sought protection from Boushie on the same grounds asserted

2

in the Ravalli County proceedings.  The Municipal Court denied the TOP request, stating that Windsor had not met his burden of establishing cause for the issuance of an order of protection.  Windsor appealed to the Fourth Judicial District Court (4th Jud. Dist. Ct. Cause No. DV 13-899).  The District Court dismissed the appeal on August 21, 2013, noting the Ravalli County proceedings and the fact that Windsor had already appealed from the Twenty-First Judicial District Court's decisions.  Windsor filed his notice of appeal with this Court on September 16, 2013, and his appeal from the Fourth Judicial District Court has been docketed as Cause Number DA 13-0618.

¶5     Given the foregoing procedural history, we may resolve Windsor's two appeals together.  Essentially, both District Courts denied Windsor's TOP requests based on the analysis set forth in the Twenty-First Judicial District Court's August 13, 2013 order in Cause Number SB 13-024.  The court there reasoned that Windsor had failed to make the necessary showings under § 40-15-201(1), MCA, which requires a petitioner seeking a temporary order of protection to demonstrate that he "is in reasonable apprehension of bodily injury or is a victim of one of the offenses listed in 40-15-102, has a relationship to the respondent if required by 40-15-102, and is in danger of harm if the court does not issue a temporary order of protection immediately."

¶6     Windsor's TOP requests apparently arose from "cyber-blog" exchanges between him and Boushie.  These occurred over a distance of hundreds of miles, given that the two live in different states (Boushie in Montana; Windsor in Georgia or South Dakota).  Windsor admitted that he does not know Boushie personally, but claimed that Boushie "cyberstalks me."  Also, Windsor described an incident that allegedly occurred August 4,

3

2013, on Interstate 90 near Butte. Windsor claimed that while he was driving from Billings to Missoula, Boushie shot at Windsor's vehicle, missed, and caused another vehicle to burst into flames. Windsor asserted that "a car in the lane to my right and just ahead of me burst into flames and a cloud of smoke billowed out, completely obscuring the roadway and the other vehicles. I grabbed my camera and was able to snap a couple of photos after I had slowed." Windsor submitted one of these photos; however, the District Court observed that "[t]he 'photo' of this incident submitted by Windsor is a virtually all black Rorschach blot, indecipherable, and contributes nothing of value, except to increase the Court's skepticism of Windsor's credibility."

¶7 Given that Windsor and Boushie apparently live in different states, the District Court did not find Windsor's alleged fear for his physical wellbeing to be realistic. Indeed, Windsor had recently driven in a vehicle across Montana to bring himself into Boushie's physical proximity. Even after the alleged shooting incident on Interstate 90, Windsor continued to drive toward Boushie's place of residence in western Montana. The District Court thus found that Windsor's claim of reasonable apprehension of bodily injury "appears specious." Because the cyber traffic was occurring over distances seemingly separated by several hundred miles, the court stated that it could discern no immediate danger of harm, "except the potential of physical contact with Boushie that Windsor himself has initiated and inflicted upon himself by traveling into Western Montana." Finally, the District Court reasoned that Windsor was only an *alleged* victim of stalking and that, in order to be a proven victim of stalking, a fact-finder would need to determine beyond a reasonable doubt that Boushie had stalked Windsor.

4

¶8      On appeal, both Windsor and Boushie are self-represented.  Windsor takes issue with the District Court's evaluation of his allegations and documentation in support of his TOP requests, as well as the District Court's suggestion that a stalking conviction is required before an order of protection may be issued.  We agree with Windsor that requiring a "conviction" in order to be considered a "victim" would defeat the purpose of Title 40, chapter 15, MCA, which is "to promote the safety and protection of all victims of partner and family member assault, victims of sexual assault, and victims of stalking." Section 40-15-101, MCA.  The fact that § 40-15-201, MCA, contemplates "immediate" action by the court upon a finding that the petitioner is in danger of harm indicates that an actual "conviction" following a stalking prosecution is not a prerequisite to the issuance of a temporary order of protection.

¶9      Nevertheless, we will affirm a district court decision when it reaches the correct result, even though the district court's reasoning is not entirely correct.  *State v. Shepard*, 2010 MT 20, ¶ 9, 355 Mont. 114, 225 P.3d 1217.  As applied to the facts of this case, Windsor was required to establish (1) that he is in reasonable apprehension of bodily injury, or is a victim of stalking, and (2) that he is in danger of harm if the court does not issue a temporary order of protection immediately.  *See* §§ 40-15-201(1), -102(2)(a), MCA.  First, we agree with the District Court that Windsor's claimed apprehension of bodily injury is not reasonable, given the geographic distance over which the alleged "cyberstalking" was taking place and the fact that neither party knew the other personally.  Second, stalking is defined as purposely or knowingly causing another person substantial emotional distress or reasonable apprehension of bodily injury or death

by repeatedly (a) following the stalked person, which did not occur here, or (b) harassing, threatening, or intimidating the stalked person, in person or by mail, electronic communication, or any other action, device, or method. Section 45-5-220(1), MCA. There is no credible evidence that Boushie harassed, threatened, or intimidated Windsor. Moreover, the offense of stalking does not apply to a constitutionally protected activity, § 45-5-220(2), MCA, and, as the District Court noted, the blogging alleged here involved "First Amendment 'free speech' rights with which [Windsor and Boushie] each appear familiar and in which they regularly engage." Finally, apart from these two elements, Windsor failed to establish the final element—i.e., that he was in danger of harm if the court does not issue a temporary order of protection immediately. As the District Court observed, the only danger of harm was "the potential of physical contact with Boushie that Windsor himself has initiated and inflicted upon himself by traveling into Western Montana."

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. Windsor has failed to demonstrate that he was entitled to the issuance of a TOP. We thus affirm the decisions of both District Courts denying his appeals and his TOP requests.

¶11 As a final matter, Boushie filed motions asking this Court to dismiss Windsor's appeals. This Court issued orders in both causes (on December 3, 2013, in DA 13-0540; on October 15, 2013, in DA 13-0618) indicating that Boushie's motions would be considered during the classification process. Given the foregoing resolution of Windsor's appeals on the merits, we now deem Boushie's motions moot and, as such, denied.

6

¶12 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE