FILED

March 22 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0538

DA 15-0538

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 67

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

JAMES WALLACE LANGLEY,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DC-14-062B
                Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Colin M. Stephens, Nicholas K. Brooke, Smith & Stephens, P.C.,
          Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
          Attorney General, Helena, Montana

          Edward J. Corrigan, Flathead County Attorney, Allison Howard, Deputy
          County Attorney, Kalispell, Montana

                       Submitted on Briefs: February 24, 2016

                             Decided: March 22, 2016

Filed:

_____
                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 James Wallace Langley appeals a judgment of the Eleventh Judicial District Court, Flathead County, sentencing him to the Department of Corrections (DOC) for ten years, with five years suspended. We address the following issue on appeal:

*Whether the District Court erred when it denied Langley's motion to withdraw his no contest plea.*

¶2 We reverse and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On February 6, 2014, the State charged Langley with one count of Arson, a felony, in violation of § 45-6-103(1)(a), MCA. Langley entered into a plea agreement with the State on January 22, 2015. The written plea agreement provides in part:

Pursuant to § 46-12-211(1)(b), MCA, and conditioned upon the understandings specified below:

The Defendant will enter into a Nolo Contendere plea to Count I, Arson, pursuant to § 46-12-212(2).

The State will recommend to the Court that <u>SENTENCING BE DEFERRED FOR 6 YEARS</u> UNDER THE FOLLOWING TERMS AND CONDITIONS:

.  .  .

The State agrees that the Defendant shall be entitled to:

A. Enter a Nolo Contendere plea.

B. Withdraw his plea subsequent to the entry of it in the event the State fails to perform its obligations pursuant to this agreement; or

C. If the Court refuses to accept the Defendant's Nolo Contendere plea.

2

The agreement's Acknowledgment of Rights section provides that "in exchange for a particular plea, the prosecutor will recommend a particular sentence" and that "the recommendation of the county attorney in no way binds the court when imposing sentence."

¶4 At the January 22, 2015 change of plea hearing, the District Court conducted a colloquy to establish that Langley was entering into a knowing, intelligent, and voluntary plea. During questioning, Langley acknowledged his understanding that the court was not bound by the sentencing recommendation in the plea agreement and that the court could impose "something different than what the plea agreement calls for." The court then set a sentencing hearing date for March 12, 2015.

¶5 During the March sentencing hearing, the District Court informed the parties that it was not inclined to impose a deferred sentence and asked how counsel would prefer to proceed. Langley's attorney moved to withdraw the plea. The court replied, "I would normally grant that motion if it was a binding plea agreement but it's not, so I think that would have to be filed and formally briefed." The court stated that it would give Langley more time to present evidence as to why he should be given a deferred sentence, and postponed sentencing.

¶6 Before the next hearing, Langley filed a motion to withdraw his no contest plea and requested a hearing. Langley's motion asserted, in part, that the District Court did not comply with the statutory procedures for rejecting plea agreements and that the court must allow him to withdraw his plea pursuant to § 46-12-211(1)(b) and (4), MCA. The

3

State opposed Langley's motion, arguing that the plea agreement did not allow Langley to withdraw his plea, and that any ambiguity should be resolved against Langley because his attorney drafted it.

¶7     The court held a hearing on May 27, 2015, to discuss Langley's motion to withdraw his no contest plea; however, Langley's attorney informed the court that he was not prepared to proceed with the hearing because he "just got back into town last night, and [he] missed [the hearing] on the calendar." The court allowed Langley's attorney to file a reply brief despite missing the filing deadline. The court informed the parties that it had not yet decided whether to accept or reject the plea agreement. The court also determined that the motion to withdraw the no contest plea would be decided without a hearing and Langley's attorney agreed to waive that hearing. Langley filed his reply brief two days later.

¶8     On June 3, 2015, the court denied Langley's motion to withdraw his plea. The court based its order primarily on the conclusion that Langley entered the plea "voluntarily" and "knowingly." The court concluded that it "fully complied with the statutory pleas [sic] agreement procedure set forth in Section 46-12-211, MCA," because the court "discussed the fact that it was not bound by the plea agreement" and "specifically inquired whether, despite the fact that [Langley] could receive a different sentence, [Langley] was willing to enter a plea."

¶9     The District Court held a sentencing hearing on June 11, 2015. After presenting witness testimony, Langley and the State—which had admitted to being bound by the

4

agreement—both asked the court to follow the plea agreement. The court then explained why it would not follow the plea agreement based on the facts of the case, and pronounced that it would sentence Langley to the DOC for ten years with five years suspended.

¶10 On July 20, 2015, Langley filed a petition for writ of habeas corpus with this Court. In his petition, Langley asserted that his sentence was illegal because the plea agreement was of the type contemplated in § 46-12-211(1)(b), MCA, and therefore the District Court should have allowed him to withdraw his plea pursuant to § 46-12-211(4), MCA. We denied Langley's petition, concluding that habeas relief was not available and that Langley's remedy was a direct appeal. *Langley v. Batista*, No. OP 15-0430, Or. (Mont. Sept. 1, 2015).

¶11 Thereafter, on August 5, 2015, the District Court entered final judgment, sentencing Langley to the DOC for ten years with five years suspended and recommending that Langley be placed in an appropriate treatment facility. Represented by a different attorney, Langley appeals.

**STANDARDS OF REVIEW**

¶12 The appeal of an order denying a motion to withdraw a plea presents a question of law that we review de novo. *State v. Zunick*, 2014 MT 239, ¶ 10, 376 Mont. 293, 339 P.3d 1228. A plea agreement is a contract and is subject to contract law standards. *State v. Shepard*, 2010 MT 20, ¶ 8, 355 Mont. 114, 225 P.3d 1217. The construction and

interpretation of a contract are questions of law that we review for correctness. *Ophus v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 447, 11 P.3d 1192.

## DISCUSSION

¶13    *Whether the District Court erred when it denied Langley's motion to withdraw his no contest plea.*

¶14    Section 46-12-211, MCA, provides in pertinent part:

(1) The prosecutor and the attorney for the defendant, or the defendant when acting pro se, may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the prosecutor will do any of the following:

(a) move for dismissal of other charges;

(b) agree that a specific sentence is the appropriate disposition of the case; or

(c) make a recommendation, or agree not to oppose the defendants' request, for a particular sentence, with the understanding that the recommendation or request may not be binding upon the court.

(2) . . . [I]f a plea agreement has been reached by the parties, the court shall, on the record, require a disclosure of the agreement in open court or, on a showing of good cause in camera, at the time that the plea is offered. If the agreement is of the type specified in subsection (1)(a) or (1)(b), the court may accept or reject the agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subsection (1)(c), the court shall advise the defendant that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea.

.  .  .

(4) If the court rejects a plea agreement of the type specified in subsection (1)(a) or (1)(b), the court shall, on the record, inform the parties of this fact and advise the defendant that the court is not bound by the plea agreement,

afford the defendant an opportunity to withdraw the plea, and advise the defendant that if the defendant persists in the guilty or nolo contendere plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Section 46-12-211(1), (2), (4), MCA.

¶15 The State argues that the plea agreement is facially ambiguous because its language "is not reasonably susceptible to just one interpretation regarding the statutory type of plea agreement the parties formed." The State contends that the language stating that "the prosecutor will recommend a particular sentence" and that "the court [is not] bound by the agreement" tracks some of the critical statutory language in § 46-12-211(1)(c), MCA. Such language, according to the State, contradicts the agreement's express reference to § 46-12-211(1)(b), MCA. The State claims that the plea agreement is ambiguous because the two types of plea agreements implicated in the agreement are irreconcilable—each agreement entails different specific procedures owed to the defendant if a court chooses not to follow the recommendation. The State therefore argues that the rule of contract construction set forth in § 28-3-206, MCA, requires this Court to construe the agreement against Langley because his attorney drafted it. The State further argues that Langley's acknowledgments during the plea colloquy support interpreting the plea agreement under § 46-12-211(1)(c), MCA.

¶16 Langley asserts that he and the State entered into an unambiguous plea agreement of the type contemplated in § 46-12-211(1)(b), MCA, because the plea agreement specifically references that section. Langley argues that the language about the court being "bound" by the agreement is insignificant because a district court is not bound by

7

the parties' plea agreement under any circumstances. Langley contends that the District Court's confusion of the law surrounding plea agreements does not render the agreement ambiguous. Consequently, Langley asserts that the court was required to afford Langley the opportunity to withdraw his plea under § 46-12-211(4), MCA, and, by not doing so, the court committed reversible error. Langley asks this Court to remand his case to the District Court with instructions to conduct another sentencing hearing and either accept the agreed sentence or give Langley the opportunity to withdraw the plea.

¶17 "'A plea agreement is a contract between the State and a defendant and is subject to contract law standards.'" *Shepard*, ¶ 14 (quoting *State v. Rardon*, 2002 MT 345, ¶ 18, 313 Mont. 321, 61 P.3d 132). If the contract language is clear and unambiguous, it is a court's duty to enforce the contract as drafted and executed by the parties. *Shepard*, ¶ 14. An ambiguity exists when the language of a contract, as a whole, is reasonably subject to two different interpretations. *Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 26, 350 Mont. 516, 212 P.3d 264 (citation omitted). "An ambiguity's existence must be determined on an objective basis." *Richards*, ¶ 26.

¶18 Objectively, the plea agreement, as whole, could reasonably be interpreted as invoking either § 46-12-211(1)(b), MCA, or § 46-12-211(1)(c), MCA. While the plea agreement explicitly references § 46-12-211(1)(b), MCA, it also contains language that closely tracks § 46-12-211(1)(c), MCA. Section 46-12-211(1)(c), MCA, allows the prosecutor to "make a recommendation" for a particular sentence "with the understanding

that the recommendation or request may not be binding upon the court." The plea

agreement's Acknowledgment of Rights section includes the following language:

> j) I understand that a plea bargain agreement is an agreement between a defendant and a prosecutor and that in exchange for a particular plea, the *prosecutor will recommend* a particular sentence.

> l) I understand that on my plea alone, I could lawfully be sentenced to the maximum punishment authorized for the offense to which I plead guilty and that *the recommendation of the county attorney in no way binds the court when imposing sentence.*

(Emphasis added.) The agreement also states that Langley is entitled to withdraw his

plea if the State fails to perform its obligations or if the court refuses to accept the nolo

contendere plea, but does not state that Langley may withdraw if the court refuses to

accept the recommended sentence. Because there is an incongruity between the language

of the agreement and the type of agreement invoked by the statutory provision referenced

in the plea agreement, we conclude that it is ambiguous.

¶19 Once we determine that a contract is ambiguous, we resolve the ambiguity by

applying rules of construction, *Morning Star Enterprises v. R.H. Grover, Inc.*, 247 Mont.

105, 111, 805 P.2d 553, 557 (1991), and by considering extrinsic evidence of the parties'

intent, *Ophus*, ¶ 29. We generally construe uncertainties in contracts "against the party

who caused the uncertainty to exist," Section 28-3-206, MCA, which typically is the

party who drafted the agreement, *Ophus*, ¶ 31.

¶20 We have not had occasion to determine whether to apply this rule of construction

to plea agreements. We have, however, resolved doubts and ambiguities in favor of

criminal defendants in other circumstances. *State v. Hendrickson*, 2014 MT 132, ¶ 14,

9

375 Mont. 136, 325 P.3d 694 ("If any doubt exists on the basis of the evidence presented regarding whether a guilty plea was voluntarily or intelligently made, the doubt must be resolved in favor of the defendant."); *State v. Garcia*, 2003 MT 211, ¶ 36, 317 Mont. 73, 75 P.3d 313 ("'[C]lose questions' regarding motions to continue should be resolved in favor of the defendant . . . ."); *State v. Van Robinson*, 248 Mont. 528, 534, 813 P.3d 967, 971 (1991) ("Any ambiguity regarding the applicability of [a statutory exception] must be resolved in favor of the defendant.").

¶21    Federal courts consistently hold that ambiguities or inconsistencies in plea agreements are construed "'in favor of the defendant, ordinarily placing on the government responsibility for any lack of clarity.'"  *United States v. Avery*, 719 F.3d 1080, 1084 (9th Cir. 2013) (quoting *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002)), *accord United States v. Giorgi*, 840 F.2d 1022, 1026 (1st Cir. 1988) (holding that "the government must shoulder a greater degree of responsibility for lack of clarity in a plea agreement"); *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986) (holding that "both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements"); *Innes v. Dalsheim*, 864 F.2d 974, 979 (2d Cir. 1988) (concluding that "the state must bear the burden for any lack of clarity in the [plea] agreement and ambiguities should be resolved in favor of the defendant").

10

¶22 We find this authority persuasive and conclude that an ambiguity in a plea agreement should be construed in favor of the defendant. Accordingly, we construe this plea agreement's ambiguity in Langley's favor and examine the record to ascertain evidence of the parties' intent.

¶23 We are unconvinced by the State's argument that the District Court's statements during the January 2015 plea colloquy about not being "bound" by the sentencing recommendation in the plea agreement resolve the ambiguity in favor of § 46-12-211(1)(c), MCA. As Langley correctly points out, a court is not bound by a plea agreement between the parties—whether the agreement is made pursuant to § 46-12-211(1)(a), (b), or (c), MCA. Section 46-12-211(2), MCA ("If the agreement is of the type specified in subsection (1)(a) or (1)(b), the court *may* accept or reject the agreement . . . ."); § 46-12-211(1)(c) (providing that the "recommendation or request *may not* be binding upon the court") (emphases added). Moreover, the court did not advise Langley at the time the plea was offered that he would have no right to withdraw the plea if the court chose not to accept the plea agreement—which is required for a § 46-12-211(1)(c), MCA, plea agreement. Section 46-12-211(2), MCA (providing that "the court shall advise the defendant that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea").

¶24 The plea agreement states expressly that it is entered pursuant to § 46-12-211(1)(b), MCA, and does not mention § 46-12-211(1)(c), MCA. Defense counsel's statements during the sentencing hearing illustrate that he believed the plea

11

agreement to be a § 46-12-211(1)(b), MCA, agreement. Immediately after the court indicated that it was not inclined to follow the plea agreement, Langley's counsel moved to withdraw the plea. After the court deferred imposing a sentence during that hearing, Langley filed a motion to withdraw the plea pursuant to § 46-12-211(1)(b), MCA. Again, Langley asserted that the plea was "specifically entered pursuant to § 46-12-211(1)(b)" in his reply brief on that motion. Defense counsel's contemporaneous motion as soon as the court indicated rejection of the recommended sentence is strong indication of the Defendant's intent.

¶25 Resolving the ambiguities in Langley's favor, and upon consideration of the record, we conclude that the plea agreement in this case should be construed as a § 46-12-211(1)(b), MCA, agreement. At the time the court rejects a § 46-12-211(1)(b), MCA, plea agreement, it must, on the record, inform the parties of this fact and provide the ensuing advisories: 1) advise the defendant that the court is not bound by the plea agreement, 2) afford the defendant the opportunity to withdraw the plea, and 3) advise the defendant that if he persists in the nolo contendere plea, the disposition of the case may be less favorable to him than contemplated by the plea. *Zunick*, ¶ 16; § 46-12-211(4), MCA. As such, the District Court erred by not following the required procedures for rejecting the parties' plea agreement.

## CONCLUSION

¶26 We reverse the District Court's judgment and remand with instructions to conduct another sentencing hearing. If the court accepts the plea agreement at that time, the court

12

shall sentence Langley in accordance with the plea agreement. If the court rejects the plea agreement again, it must issue the full statutory advisement and give Langley the opportunity to withdraw his plea and proceed to trial.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT