**FILED**

April 29 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0001

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 145

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

SHANNON BULLPLUME,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DC 05-24
Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; David C. Avery,
Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General;
John Paulson, Assistant Attorney General, Helena, Montana

          Larry D. Epstein, Glacier County Attorney, Cut Bank, Montana

Submitted on Briefs:  September 17, 2008

Decided:  April 28, 2009

Filed:

    _____
                Clerk

District Court Judge Michael Prezeau delivered the Opinion of the Court.

¶1 Shannon Bullplume was convicted of deliberate homicide and use of a dangerous weapon to commit an offense (weapon enhancement) following a jury trial in the Ninth Judicial District Court in Glacier County. The court sentenced Bullplume to 80 years in the Montana State Prison on the deliberate homicide conviction, with an additional consecutive 10 years on the weapon enhancement charge. Bullplume appeals his conviction, and we reverse.

## BACKGROUND

¶2 During the evening of April 22, 2005, Bullplume was involved in a fight that left Fernandel Omeasoo, Jr., dead from a knife wound. Investigators initially believed that Bullplume's girlfriend had stabbed Omeasoo and that, while Bullplume had assaulted another individual during the melee, his primary involvement in the crime was in covering up his girlfriend's actions. On April 26, 2005, the State filed an Information charging Bullplume with assault, disorderly conduct, obstruction of justice, and tampering with evidence.

¶3 Further investigation led the investigators to conclude that it was Bullplume, not his girlfriend, who had stabbed Omeasoo. The State was granted leave to file an Amended Information, charging Bullplume with deliberate homicide and assault with a weapon. The assault with a weapon charge was later dismissed in response to a motion filed by Bullplume.

2

¶4 Bullplume pled not guilty to the deliberate homicide charge, and his case was scheduled for trial. Plea negotiations followed, and on September 26, 2005, Bullplume, his counsel, and the prosecutor signed a plea agreement. Under the terms of the plea agreement, the State agreed to reduce the charge from deliberate homicide to mitigated deliberate homicide, to which Bullplume would enter a plea of nolo contendere. The parties agreed to jointly recommend a sentence of 28 years in the Montana State Prison, with 13 years of the sentence suspended. As a further condition of the plea agreement, the State agreed to dismiss other charges that had arisen during Bullplume's incarceration.

¶5 Neither the plea agreement nor the acknowledgment of rights, filed with the plea agreement, informed Bullplume that the court was not bound by the plea agreement or what the consequences or procedure would be if the court were to reject the plea agreement.

¶6 Pursuant to the plea agreement, the State filed a Second Amended Information, charging Bullplume with mitigated deliberate homicide. The maximum possible sentence for mitigated deliberate homicide is 40 years. Section 45-5-103(4), MCA.

¶7 The parties appeared in court on September 28, 2005, for Bullplume's plea to the amended charge. Prior to accepting Bullplume's plea, the court informed Bullplume that it was not bound by the plea agreement, and if the court ultimately decided to reject the plea agreement, Bullplume would be

> allow[ed] . . . to withdraw any guilty plea [he] may have entered and plead not guilty to whatever charges are still pending before this court in this

3

matter, and that may well be the original Information. The State may come and ask to refile the Deliberate Homicide charge. . . .

Following an appropriate colloquy, Bullplume entered his nolo contendere plea to the mitigated deliberate homicide charge. The court accepted the plea, ordered a presentence report, and scheduled a sentencing hearing.

¶8 The presentence report was prepared and filed, but after reviewing it, the court entered an order entitled "Rejection of Plea Agreement" which contained the following language:

> This Court informed the Defendant if the Court determined to accept the plea agreement it would impose the sentence jointly recommended in that agreement, and if the Court determined to reject the plea agreement it would allow the Defendant to withdraw any *nolo contendere* plea and proceed to trial on the charges in the Information.
>
> .   .   .
>
> Accordingly, pursuant to Section 46-12-211(4), MCA, the Defendant will be permitted to withdraw his *nolo contendere* plea and proceed to trial on the charges now pending. The Defendant is advised if he persists in maintaining his *nolo contendere* plea the disposition of this case may be less favorable than that contemplated by the plea agreement.

¶9 The parties appeared in court on the date originally scheduled for the sentencing hearing, and the following discussion took place between the court and counsel:

> PROSECUTOR: The Court rejected a plea agreement previously entered into, which as I understand the process means that all bets are off, that the guilty plea is withdrawn, and the State will refile the Deliberate Homicide Information, and what we need today is a trial date on that one . . . .
>
> COURT: First let me take care of a procedural step here. Mr. Hudspeth, as I informed your client at the time that I accepted his guilty plea in this matter, that if I determined not to accept the plea agreement he would have a right to withdraw his guilty plea; does he wish to exercise that right?

4

DEFENSE COUNSEL: He does, your Honor.

COURT: Alright, the guilty plea of Shannon Bullplume in this matter is considered withdrawn.

PROSECUTOR: The State would move for leave to refile the Information originally filed herein.

COURT: I'll grant your request to refile. Mr. Bullplume you have already entered not-guilty pleas on that Information.

¶10 Bullplume had not executed a written acknowledgment of his rights and of his understanding of the possible consequences of withdrawing his plea, and he was never asked during the hearing to affirm his understanding of those rights and consequences. The court did not make any inquiries of Bullplume, who did not utter a single word during the hearing.

¶11 Even though the State had orally sought and been granted leave to refile the original Information, it did not file an Amended Information reinstating either the original Information (charging Bullplume with assault, disorderly conduct, obstruction of justice, and tampering with evidence) or the First Amended Information (charging Bullplume with deliberate homicide). The Second Amended Information, charging Bullplume with mitigated deliberate homicide, remained the most recently filed Information in the case until the day the trial began more than a year later, on November 13, 2006.

¶12    On November 8, 2006, the State sought leave to file an Amended Information,[1] adding a weapon enhancement count to the pending charge. On November 13, 2006, the first day of trial, the court granted leave for the State to file the Amended Information, and the Information was filed. That morning, during an attorney conference in chambers prior to voir dire, the following discussion took place between the court and counsel, regarding the charges on which Bullplume was being tried:

> PROSECUTOR:  It's Deliberate, Your Honor. The underlying offense was Deliberate with Mitigated as a lesser included, I believe he's charged with Deliberate Homicide. We amended it, I'm sorry, that was my mistake. The original Information charged Assault With A Weapon and Deliberate Homicide, and the defense, through prior defense counsel, moved to strike Assault With A Weapon and we consented to that.
>
> COURT:  I thought I saw in here an Amended Information that only charged Mitigated. If that's the case, then we're going on Mitigated.
>
> PROSECUTOR:  That's fine. That means there is no lesser included.
>
> COURT:  Nope. But I could be mistaken. Let me find it. Here we go, Second Amended Information, Document 25.
>
> PROSECUTOR:  I redid it.
>
> COURT:  Mitigated Deliberate.
>
> PROSECUTOR:  That was my mistake. I would withdraw our instruction for lesser included offenses.
>
> COURT:  You will get your second count because you have to charge that to get the Weapons Enhancement. You're entitled to ask  for that enhancement. Anything else?

---

[1]Five Informations were ultimately filed in this case, the final three of which are all entitled, "Second Amended Information."

6

PROSECUTOR: No.

COURT: Okay. Well, let me know when we're ready to start with the jurors.

PROSECUTOR: Your Honor, if I may, as long as that was a typographical error on my part, may I proceed under Deliberate? Do you guys object?

DEFENSE COUNSEL: Surely, we object.

OTHER DEFENSE COUNSEL: We object.

COURT: It's going to be tried as Mitigated.

¶13 Jury selection began, and at the outset, the court informed the jury that Bullplume was being tried on the charge of mitigated deliberate homicide. After the parties had examined the jury panel, but before they exercised their preemptory challenges, they returned to chambers. After hearing additional argument from counsel, the court permitted the State to file a new Amended Information, charging Bullplume with deliberate homicide and use of a weapon to commit the crime. As a remedy for allowing this last minute amendment, the court permitted Bullplume's counsel to reopen voir dire and ask additional questions of the jury panel relating to the new charge.

¶14 Before leaving chambers, the court engaged in the following exchange with Bullplume:

COURT: While we're all here taking care of this matter, Mr. Bullplume, the State of Montana has now filed, what's in effect a second Count, and I have let them do that, and it's a Count that says if you're found to have committed an act, and in so doing that act you used a weapon, they can ask to have the sentence enhanced. The statute requires them to file it as a separate Count. I'm not sure it's a separate criminal Count, but the Legislature has mandated it, as a result of some Supreme Court decisions, so I need to inform you that that has occurred. You have the same rights

7

that I have informed you [that] you have in this matter. You have the right to remain silent; you have the right to counsel in this matter. Your counsel is here, and unless I hear something different, I'll enter a not guilty plea on [your] behalf, to the extent we need some plea; do you understand that Mr. Bullplume?

BULLPLUME: Yeah.

¶15 The jury was selected, the trial proceeded, and the jury returned guilty verdicts on both the deliberate homicide charge and the weapon enhancement charge. Bullplume was later sentenced to 80 years on the deliberate homicide charge, with an additional 10 years for use of a deadly weapon, the sentences to run consecutively.

## ISSUES

¶16 We restate the issues as follows:

¶17 1. Whether the District Court properly determined that Bullplume was intentionally and voluntarily waiving his statutory right to stand on his nolo contendere plea to the charge of mitigated deliberate homicide.

¶18 2. Whether Bullplume's due process rights were violated when the District Court granted the State permission to amend the charge to deliberate homicide after trial had commenced.

¶19 3. Whether Bullplume was properly arraigned on the weapon enhancement charge.

## STANDARD OF REVIEW

¶20 The voluntariness of a plea withdrawal involves a mixed question of law and fact, which this Court reviews de novo. *State v. Muhammad*, 2005 MT 234, ¶ 12, 328 Mont. 397, 121 P.3d 521.

## DISCUSSION

¶21 **Under the facts of this case, does the record support a conclusion that Bullplume made an intentional and voluntary waiver of his statutory right to stand on the plea he entered under the plea agreement?**

¶22 Section 46-12-211(1), MCA, provides that the State can agree in a plea agreement to do any of the following: (a) move for dismissal of other charges; (b) agree that a specific sentence is the appropriate disposition of the case; or (c) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence. Under the statute, the court may reject any of the three types of plea agreements. Section 46-12-211(2), MCA. If the court rejects a plea agreement, whether or not the defendant can withdraw his or her plea of guilty or nolo contendere depends upon which type of provisions are contained in the plea agreement.

¶23 If the plea agreement contains the third type of provision, wherein the State recommends a sentence or agrees not to oppose the defendant's recommendation, the defendant is not entitled to withdraw his or her guilty plea if the court rejects the recommendation. If, however, the plea agreement contains either of the first two types of provisions—dismissal of other charges or agreement upon a specific sentence—§ 46-12-211(4), MCA, provides the defendant with an election to either stand on the previously entered plea or to withdraw it:

9

If the court rejects a plea agreement of the type specified in subsection (1)(a) or (1)(b), the court shall, on the record, inform the parties of this fact and advise the defendant that the court is not bound by the plea agreement, afford the defendant an opportunity to withdraw the plea, and advise the defendant that if the defendant persists in the guilty or nolo contendere plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Section 46-12-211(4), MCA.

¶24 The plea agreement in this case contained both a dismissal of other charges and a recommendation for a specific sentence. Thus, when the court rejected the plea agreement, the court was required to "afford the defendant an opportunity to withdraw the plea."

¶25 The court rejected the plea agreement and advised the parties of its rejection in a written order. The court's order, however, contained confusing statements about Bullplume's election. For example, the order advised Bullplume that if he were to withdraw his nolo contendere plea, he would "proceed to trial on the charges in the Information." At that time, the only charge in the Information was a mitigated deliberate homicide charge. Later in the order, Bullplume was advised that if he were to withdraw his nolo contendere plea, he would "proceed to trial on the charges now pending." Again, the mitigated deliberate homicide charge was the only charge that was then pending.

¶26 The order also informed Bullplume that maintaining his nolo contendere plea could result in a "less favorable" sentence than he would receive under the plea agreement. This advisement is consistent with the language of the statute and is correct

10

as far as it goes, but it did not inform Bullplume that withdrawing his nolo contendere plea would put him at risk of a sentence that could be several times as great as the maximum sentence he could receive if he elected not to withdraw his plea. The Court appreciates that before Bullplume entered his nolo contendere plea to the mitigated deliberate homicide charge, he was given essentially correct information by the District Court. Unfortunately, however, that information was later tainted by the confusing and incomplete statements contained in the subsequent written order.

¶27 It has long been the rule that before accepting a plea of guilty or nolo contendere, the court must establish that the plea is a "voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant." *State v. Sanders*, 1999 MT 136, ¶ 14, 294 Mont. 539, 982 P.2d 1015, *overruled on other grounds*, *State v. Deserly*, 2008 MT 242 ¶ 12, 344 Mont. 468, 188 P.3d 1057. In fact, § 46-12-210, MCA, spells out a list of information and rights a defendant must acknowledge, either by a written acknowledgment or through a colloquy with the court, before a defendant's plea of guilty or nolo contendere can be accepted. The reason for requiring such thoroughness is that the entry of a guilty or nolo contendere plea entails a waiver of constitutional rights. *State v. Radi*, 250 Mont. 155, 159, 818 P.2d 1203, 1206 (1991) (citing *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970)).

¶28 Arguably, the withdrawal of a conditionally accepted guilty plea, as opposed to the entry of one, does not entail a waiver of constitutional rights.[2] Nevertheless, § 46-12-211(4), MCA, does create a statutory right for a defendant to stand on his or her guilty plea if the court rejects the plea agreement. The rejection of a plea agreement does not automatically create a situation in which, as the prosecutor asserted in this case, "all bets are off." Nor is it simply "a procedural step," as the court stated before it accepted Bullplume's counsel's statement of his client's wish to withdraw his nolo contendere plea to the lesser charge. Until a defendant exercises the election to withdraw the previously entered guilty plea, the defendant retains whatever protection may be afforded by the maximum sentence that could be imposed for the crimes to which the defendant pled guilty under the plea agreement. The withdrawal of a guilty plea after a court's rejection of a plea agreement is not a mere formality, particularly when the withdrawal exposes the defendant to the possibility of significantly greater punishment.

¶29 After the court rejects a plea agreement entered under § 46-12-211(1)(a) or (b), MCA, even if the withdrawal of the defendant's guilty or nolo contendere plea does not involve a waiver of constitutional rights, it does involve the waiver of a statutory right. Waiver is defined as the voluntary abandonment of a known right. A waiver cannot be

---

[2] Justice Leaphart asserts in his concurring opinion that jeopardy attaches whenever the court accepts a guilty plea. Among the jurisdictions that have considered this question, there is a division of opinion whether jeopardy attaches if the acceptance of the guilty plea is conditional, as in this case. *See e.g. U.S. v. Patterson*, 406 F.3d 1095 (9th Cir. 2005).

presumed. There can be no waiver by one who does not know his rights or what he is waiving. *State v. Bird*, 2001 MT 2, ¶¶ 35-36, 308 Mont. 75, 43 P.3d 266.

¶30 We decline to impose the same stringent requirements for accepting a plea withdrawal as are mandated by § 46-12-210, MCA, for accepting the entry of the guilty or nolo contendere plea in the first instance. Nevertheless, when a court rejects a plea agreement of the type set forth in § 46-12-211(1)(a) or (b), MCA, before accepting the withdrawal of the defendant's plea of guilty or nolo contendere, the court must be satisfied that the defendant understands his or her statutory right to stand on the guilty plea and understands the possible consequences of waiving that right.

¶31 Whether or not Bullplume voluntarily relinquished his right to stand on his nolo contendere plea involves case specific considerations. The facts of this case are that before the purported plea withdrawal, the court gave Bullplume conflicting, inaccurate, and incomplete information about the consequences of withdrawing his plea. No questions were asked of Bullplume to assess his understanding of the consequences of withdrawing his nolo contendere plea, and he did not sign a written acknowledgment of his understanding. Until the very day of trial, it was unknown, even to the court, that Bullplume would be tried on a charge of deliberate homicide, together with a weapon enhancement charge.

¶32 The State faults Bullplume for not raising the issue of the voluntariness of his plea withdrawal earlier in the proceeding. However, until the court permitted the last minute amendment of the charge from mitigated deliberate homicide to deliberate homicide,

13

Bullplume had suffered no prejudice from the purported withdrawal of his nolo contendere plea. When the motion to amend the charge to deliberate homicide was granted, after the trial had commenced and voir dire had virtually been completed, Bullplume did object to the amendment, even if he did not tie his objection to the purported withdrawal of his nolo contendere plea, more than a year earlier.

¶33 Under the unique facts of this case, before accepting Bullplume's withdrawal of his nolo contendere plea, the court erred in not obtaining an acknowledgment from Bullplume that he understood his rights and was making an intentional and voluntary waiver of his statutory right to stand on his nolo contendere plea to the charge of mitigated deliberate homicide.

¶34 Having concluded that Bullplume did not effectively withdraw his nolo contendere plea to the mitigated deliberate homicide charge, it is unnecessary for this Court to consider the other issues raised on appeal.

¶35 Bullplume urges us to reverse his convictions on the crimes of deliberate homicide and use of a weapon and remand the case back for sentencing on the crime of mitigated deliberate homicide. Bullplume's appeal is premised on the position that if he had been fully aware of his right to maintain his nolo contendere plea and of the possible consequences of waiving that right, he would not have withdrawn his plea to the mitigated deliberate homicide charge and exposed himself to the more severe penalties for the crimes of which he was ultimately convicted. We conclude that remanding the

14

case for sentencing on the mitigated deliberate homicide charge, with the court not being bound by the rejected plea agreement, is the proper remedy.

¶36 Reversed and remanded for further proceedings consistent with this opinion.


/S/ MICHAEL PREZEAU
Hon. Michael Prezeau, District Court Judge,
sitting in place of Justice Jim Nelson


We concur:


/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JOHN WARNER
/S/ PATRICIA COTTER

/S/ JEFFREY M. SHERLOCK
Hon. Jeffrey M. Sherlock, District Court Judge,
sitting in place of former Chief Justice Karla M. Gray


Justice W. William Leaphart, specially concurring.

¶37 I specially concur. Although I concur with the result reached by the Court, I take issue with the Court's suggestions in paragraphs 28 and 29 that the withdrawal of a guilty plea does not entail a waiver of a constitutional right. I would agree that if a defendant is allowed to withdraw a plea before a court accepts a plea, no constitutional right is implicated. However, when a court (as here) accepts a guilty plea and then, at a later

juncture, decides to reject the plea and allow a defendant to withdraw the plea, constitutional rights are implicated. This is so because once a jury has been emplaneled and sworn, *Crist v. Bretz*, 437 U.S. 28, 35, 98 S. Ct. 2156, 2161 (1978), or the court accepts a plea of guilty, jeopardy has attached under the Fifth Amendment to the United States Constitution and Article II, § 25 of the Montana Constitution. "[a]s a general rule, jeopardy attaches in a criminal case at the time the district court accepts the defendant's guilty plea." *See U.S. v. Patterson*, 381 F.3d 859 (9th Cir. 2004), *U.S. v. Cambindo Valencia*, 609 F.2d 603, 637 (2d Cir. 1979) (stating "it is axiomatic of the double jeopardy clause that jeopardy attached once [the defendant's] guilty plea was accepted"); *see also United States v. Bond*, 87 F.3d 695, 699 (5th Cir. 1996); *United States v. Alt*, 83 F.3d 779, 781 (6th Cir. 1996); *Dawson v. United States*, 77 F.3d 180, 182 (7th Cir. 1996); *United States v. Wong*, 62 F.3d 1212, 1214 (9th Cir. 1995).

¶38 Once jeopardy has attached, a defendant has the constitutional right to proceed to judgment before the chosen jury or tribunal as to the charges pending when his plea was accepted. That being the case, the court cannot allow a defendant to withdraw a guilty plea without first advising the defendant that in doing so, he is foregoing his right not to be placed again in jeopardy and exposing himself to new charges which carry significantly greater punishment. Further, any consent to waive the double jeopardy protection must come from the defendant himself, either orally on the record, or, consistent with § 46-12-210(2), MCA, through a written acknowledgment.

16

¶39 It appears that the confusion in this case arises from the fact that the District Court first accepted Bullplume's guilty plea and set the matter for sentencing. Only later, after reviewing the presentence report, did the Court change its mind and decide to reject the plea. This is not the procedure envisioned by the statues. Rather, the Court should allow the defendant to enter his/her plea pursuant to the agreement. At that time, the Court may "accept or reject the agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." Section 46-12-211(2), MCA. However, once the Court accepts the plea, jeopardy has attached. If, as here, the Court accepts the plea before seeing the presentence report, it cannot subsequently change its mind without addressing the fact that jeopardy has attached.

¶40 Thus, I concur with this Court's conclusion that the District Court must satisfy itself that the defendant understands his statutory right to stand on the guilty plea. However, and more importantly, I would hold that the District Court must advise the defendant that, in withdrawing his plea, (1) he is waiving his constitutional right not to be placed again in jeopardy, and (2) he is exposing himself to the filing of new charges which carry significantly greater punishment. Secondly, the court must obtain the defendant's specific acknowledgment that he understands and consents to the above jeopardy.

/S/ W. WILLIAM LEAPHART

17