

DA 10-0028

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 40

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

SHANNON DAVID BULLPLUME,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DC 05-024
Honorable Dirk M. Sandefur, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

            Joslyn Hunt, Chief Appellate Defender; Eileen A. Larkin, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General; John Paulson, Assistant
Attorney General, Helena, Montana

            Larry D. Epstein, Glacier County Attorney, Cut Bank, Montana


Submitted on Briefs:  February 1, 2011

Decided:  March 8, 2011


Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Shannon Bullplume pleaded no contest in the District Court of the Ninth Judicial District, Glacier County, to mitigated deliberate homicide. He appeals his sentence. We affirm.

## ISSUES

¶2 Bullplume raises two issues on appeal:

¶3 1. Whether the State breached the pre-sentence agreement.

¶4 2. Whether the District Court's sentence violated Bullplume's due process rights.

## BACKGROUND

¶5 On April 22, 2005, Bullplume was involved in a fight with Fernandel Omeasoo, Jr. During the course of the fight Omeasoo was fatally stabbed. Bullplume subsequently entered into a plea agreement whereby he agreed to plead no contest to mitigated deliberate homicide, § 45-5-103(1), MCA. The District Court rejected the plea agreement and offered Bullplume the opportunity to withdraw his plea. Bullplume withdrew the plea, went to trial, and was convicted of deliberate homicide. He was sentenced to 80 years at Montana State Prison for deliberate homicide, with a consecutive 10-year term for weapon enhancement. On appeal, this Court determined that Bullplume had never effectively withdrawn his original no contest plea, reversed the conviction and

remanded the case for sentencing on the mitigated deliberate homicide charge.[1]  On remand Judge Dirk Sandefur assumed jurisdiction.

¶6    On July 30, 2009, the District Court held a status conference.  Bullplume and the State told the District Court they were discussing a potential joint sentencing recommendation.  The District Court informed the parties that it intended to review the transcript of Bullplume's trial, in order to become familiar with the case.  While the prosecutor endorsed this proposition, counsel for Bullplume expressed skepticism.  The District Court assured the parties it could distinguish between information pertinent to a deliberate homicide conviction, and information pertinent to a mitigated deliberate homicide sentencing.

¶7    On August 31, 2009, Bullplume, his counsel and the prosecutor all signed a pre-sentence agreement.  The parties agreed to jointly recommend 40 years at Montana State Prison, with 10 suspended.  Under the agreement, both sides were obligated to refrain from arguing for any sentence other than the one jointly recommended.  Furthermore, the State agreed to not call any witnesses at the sentencing hearing.  The pre-sentence agreement explicitly noted it was non-binding, and the District Court was free to impose any legal sentence for mitigated deliberate homicide.  On October 29, 2009, Probation Officer Scott Brotnov filed an updated Pre-Sentence Investigation report (PSI).  The PSI recommended 40 years with no time suspended.

---

[1] A more detailed recitation of the facts regarding these prior events is set forth in *State v. Bullplume*, 2009 MT 145, 350 Mont. 350, 208 P.3d 378 (*Bullplume I*).

¶8     On November 12, 2009, the parties appeared at a sentencing hearing. Bullplume called Brotnov as a witness and examined him about the harsher sentence recommended in the PSI. On cross-examination, the prosecutor inquired whether Brotnov had relied on any criminal records from the Blackfeet Tribal Court. Bullplume also called Carl Pepion, Acting Chief Judge of the Blackfeet Tribe. Pepion testified that in his teenage years, Bullplume had been drunk and disorderly at times. On cross-examination, the prosecutor briefly asked how long Pepion had known Bullplume, and whether their prior interactions had involved Bullplume drinking.

¶9     Just before sentencing, the District Court announced that it understood the State and Bullplume had made a joint sentencing recommendation. The District Court then rejected that recommendation and sentenced Bullplume to 40 years in Montana State Prison, with no time suspended. The District Court included a 20-year restriction on Bullplume's parole eligibility. Bullplume has appealed his sentence, arguing that the prosecutor breached the pre-sentence agreement, and that his sentence for mitigated deliberate homicide was imposed as punishment for Bullplume's successful appeal of his prior conviction.

STANDARDS OF REVIEW

¶10    Where a defendant was sentenced to more than one year of actual incarceration, and therefore is eligible for sentence review, we review the sentence for legality only. *State. v. Gunderson*, 2010 MT 166, ¶¶ 37-38, 357 Mont. 142, 237 P.3d 74. Whether a plea agreement was breached is a question of law this Court reviews de novo. *State v. Shepard*, 2010 MT 20, ¶ 8, 355 Mont. 114, 225 P.3d 1217. This Court reviews de novo

4

whether a district court violated a defendant's constitutional rights at sentencing. *State v. Hill*, 2009 MT 134, ¶ 20, 350 Mont. 296, 207 P.3d 307.

DISCUSSION

¶11 *Whether the State breached the pre-sentence agreement.*

¶12 Bullplume alleges the State breached the pre-sentence agreement in three ways. He argues a breach occurred when the State endorsed the District Court's decision to read the trial transcript. Additionally, he asserts the State improperly elicited testimony in support of a different sentence. Finally, he claims the State failed to jointly recommend the agreed-to sentence.

¶13 Agreements made between a defendant and the State are equivalent to contracts and subject to contract law standards. *State v. Rardon,* 2005 MT 129, ¶ 18, 327 Mont. 228, 115 P.3d 182 (*Rardon III*). In order to retain the benefit attained by a defendant's plea, the State must strictly meet any conditions imposed by the agreement. *State v. Rahn*, 2008 MT 201, ¶ 14, 344 Mont. 110, 187 P.3d 622. Once the State agrees to recommend a specific sentence, the prosecutor is obligated to approach sentencing in a manner that will not undermine the agreement. *Rardon III*, ¶ 19. There are no hard and fast criteria to determine when a breach has occurred, and each case must be assessed on its own unique facts. *Id.* at ¶ 20.

¶14 First, the Court need not address Bullplume's argument that the State breached the agreement when it endorsed the District Court's decision to read the trial transcript. The pre-sentence agreement did not exist at the time of the status hearing. The status hearing took place on July 30, 2009. The agreement was not signed until August 31, one month

5

later. Bullplume articulates no legal theory how the State allegedly breached a non-existent contract. Moreover, this Court's order specifically stated that the District Court was not bound by the previously-rejected plea agreement on remand. *Bullplume I*, ¶ 35. The District Court's rejection of the original plea agreement essentially frustrated the purpose of that document and left neither party bound by its terms.

¶15 Second, the prosecutor's cross-examination of Brotnov and Judge Pepion did not breach the pre-sentence agreement. Bullplume called both the probation officer and Tribal Court Judge as his witnesses. Nothing in the agreement precluded the State from cross-examination. The State's questioning of Judge Pepion elicited no new information. The brief cross-examination of Brotnov merely clarified that the PSI's recommended sentence had not been influenced by improper consideration of Blackfeet Tribal Court records. Nothing in the State's questions reflected an attempt to undermine, or resulted in the undermining of the pre-sentence agreement.

¶16 Third, the State fulfilled its obligation to make a joint recommendation of sentence. The State willingly entered into the pre-sentence agreement, thereby informing the District Court of a joint sentence recommendation. Nothing in the prosecutor's subsequent conduct reflected any deviation from that agreement. Bullplume asserts the State failed in its obligation to file a sentencing memorandum in support of the joint sentence. However, nothing in the pre-sentence agreement required the State to take such an action. To the extent that Bullplume complains the State's recommendation was unenthusiastic, his argument has no legal significance. This Court has recognized that a prosecutor's enthusiasm is irrelevant so long as he or she acts in good faith and does not

6

undermine the agreement. *State v. Rardon*, 2002 MT 345, ¶ 22, 313 Mont. 321, 61 P.3d 132 (*Rardon II*) (citing *State v. Van Buren*, 112 Wash. App. 585, 49 P.3d 966 (Wash. App. Div. 2 2002)). Based upon the facts of this case, there was no breach of the pre-sentence agreement.

¶17 *Whether the District Court violated Bullplume's due process rights.*

¶18 Bullplume asserts that his sentence for mitigated deliberate homicide was imposed as punishment for the successful appeal of his original deliberate homicide conviction. He argues that his re-sentence amounts to equivalent time in prison, for a lesser charge. The Due Process Clause of the Fourteenth Amendment prohibits judicial vindictiveness against a defendant who successfully attacks his previous conviction. *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S. Ct. 2072, 2080 (1969). To avoid a presumption of judicial vindictiveness, an increased sentence must be based upon objective information concerning identifiable conduct that occurred subsequent to the original sentence, and reasons supporting the sentence must be made part of the record. *State v. Redfern*, 2004 MT 277, ¶ 12, 323 Mont. 225, 99 P.3d 223; *State v. Jackson*, 2007 MT 186, ¶ 14, 338 Mont. 344, 165 P.3d 321. A defendant who mounts a due process challenge for judicial vindictiveness must initially show that he or she actually received an increased sentence. *State v. Heath*, 2005 MT 280, ¶¶ 10-11, 329 Mont. 226, 123 P.3d 228; *Redfern*, ¶¶ 10-11.

¶19 Bullplume asserts that the 20-year parole restriction, in his sentence for mitigated deliberate homicide, constitutes an increased sentence. He contends this restriction burdens him with an incarceration period equivalent to his original deliberate homicide sentence. This argument fails for two reasons. First, Bullplume's facts are in error. A

7

prisoner serving a sentence for a length of time is ineligible for parole until he has served at least one-quarter of the entire sentence. Section 46-23-201(3), MCA. Bullplume's deliberate homicide sentence was for a 90-year prison term. He was ineligible for parole until he served 22.5 years of that sentence. Therefore, the 20-year parole restriction in the mitigated deliberate homicide sentence is less than, not equivalent to, the pre-parole eligibility period under Bullplume's original sentence. Bullplume's response to this discrepancy is an inexplicable assertion that "for the sake of argument" the Court should simply ignore ten years of his original sentence. There is no legal or factual basis for such an assertion.

¶20 Second, Bullplume's entire reliance on parole eligibility is misplaced. Parole is a privilege, not a right. *McDermott v. McDonald*, 2001 MT 89, ¶ 19, 305 Mont. 166, 24 P.3d 200. It is a matter of grace, granted by the Parole Board pursuant to § 46-23-201, MCA. *Id.* In *Rardon III*, this Court concluded that the imposition of a lengthier pre-parole eligibility period does not necessarily constitute an increased sentence. *Rardon III*, ¶¶ 29-30. The reduction in Rardon's overall sentence, from 50 to 37 years, offset any change in his parole eligibility. *Rardon III*, ¶ 29. Bullplume's original sentence guaranteed 22.5 years in prison, with a potential term of 90 years. His sentence for mitigated deliberate homicide guarantees incarceration for 20 years, but decreases his overall term to 40 years. Bullplume's re-sentence both shortens the pre-parole eligibility period and greatly reduces his maximum incarceration term. This does not constitute an increased sentence.

¶21 The record does not support Bullplume's allegation of judicial vindictiveness, and consequently, there is no merit to his due process argument.  Affirmed.


/S/ MIKE McGRATH

We concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT