FILED

11/04/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0473

DA 22-0473

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 250

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

PHILIP BRYSON GRIMSHAW,

        Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC-16-701
Honorable David J. Grubich, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Tammy A. Hinderman, Appellate Defender Division Administrator,
Alexander H. Pyle, Assistant Appellate Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

        Joshua A. Racki, Cascade County Attorney, Ryan C. Ball, Michele Levine,
Deputy County Attorneys, Great Falls, Montana

Submitted on Briefs:  September 3, 2025

Decided:  November 4, 2025

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1      Appellant Philip Bryson Grimshaw appeals the Judgment issued by the Eighth Judicial District Court, Cascade County on July 7, 2022, following his conviction of Sexual Intercourse Without Consent, a felony, in violation of § 45-5-503, MCA.  We restate and address the following dispositive issues:

> *Issue 1: Whether the District Court abused its discretion by allowing the State to recall an expert witness who violated an exclusion order.*
>
> *Issue 2: Whether the District Court violated Grimshaw's due process rights by increasing his sentence after retrial.*

¶2      We affirm in part, reverse in part, and remand with instructions to amend Grimshaw's sentence in accordance with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      A jury convicted Grimshaw of sexual intercourse without consent on September 7, 2017.  Grimshaw was sentenced to 40 years in the Montana State Prison (MSP) with 20 years suspended.  Grimshaw appealed and we reversed his conviction and remanded for a new trial because the District Court had allowed the State to introduce inadmissible statistical evidence.  *See generally State v. Grimshaw*, 2020 MT 201, 401 Mont. 27, 469 P.3d 702.  The facts underlying Grimshaw's conviction are fully set forth in our prior opinion.

¶4      Grimshaw was placed in custody following his conviction in September 2017.  In September 2020, Grimshaw was released on bail following the reversal of his conviction

2

on appeal. While out on bail, Grimshaw returned to work in the food service industry and cared for his ill mother.

¶5 The case was retried in November 2021. The parties' respective theories of the case at the second trial did not substantially deviate from their theories presented at the first trial. Except for the testimony that we had ruled inadmissible in the first appeal, the evidence each party presented at the second trial remained largely the same.

¶6 As it did in the first trial, the State again called Dr. Sherri Vanino as a blind expert witness. Dr. Vanino testified about the behaviors exhibited by sexual assault victims, but she did not offer any opinions based on the specific facts of this case. Dr. Vanino explained the misunderstandings that the general population has about what is or what is not normal behavior for a sexual assault victim. Dr. Vanino labeled the misunderstandings people have as "rape myths" and repeatedly referred to the misconceptions as "myths" during her testimony.

¶7 Grimshaw called a blind expert witness, Dr. Donna Zook, who also testified about sexual assault victim behavior. Dr. Zook questioned the studies Dr. Vanino relied upon to form her opinions and explained that trauma behavior, reporting sexual assault or not reporting sexual assault, and other behaviors a victim may exhibit do not necessarily prove a person has been sexually assaulted.

¶8 Dr. Vanino remained in the courtroom during Dr. Zook's testimony. After Grimshaw rested his case-in-chief, the State sought to recall Dr. Vanino as a rebuttal witness. Grimshaw objected based on the District Court's pre-trial ruling excluding any

3

witnesses who were expected to testify from being in the courtroom during other witnesses' testimony. The District Court overruled Grimshaw's objection. The District Court concluded that M. R. Evid. 615(3) prohibits a trial court from excluding expert witnesses.

¶9 In her rebuttal testimony, Dr. Vanino testified regarding the studies she relied upon to form her opinions and reiterated her testimony about the behaviors exhibited by sexual assault victims. Dr. Vanino testified that the "regrettable sex defense" is the belief that some sexual assault allegations are made by individuals who had consensual sex that they later regretted. She referred to the regrettable sex defense as a "myth" not supported by any studies. She testified that she has seen defense attorneys rely on this theory previously and she acknowledged that there may be instances of individuals reporting consensual sex as rape, but it is uncommon.

¶10 The District Court allowed Dr. Zook to remain in the courtroom during Dr. Vanino's testimony and allowed Grimshaw to recall Dr. Zook in rebuttal. Dr. Zook reiterated her testimony that a person exhibiting behaviors associated with trauma does not necessarily prove a sexual assault occurred and she questioned the studies that Dr. Vanino relied upon. Dr. Zook addressed Dr. Vanino's testimony regarding the regrettable sex defense by clarifying the literature uses the term "wrongful sex" and reasserted that people do have consensual sex, regret it, and then report the consensual sex as rape.

¶11 The jury convicted Grimshaw of sexual intercourse without consent and Grimshaw was returned to custody.

4

¶12    Dr. Michael Scolatti conducted a second psychological/psychosexual evaluation (PSE) following the second trial.  The report noted that Grimshaw had made progress to complete the sex offender treatment program, completed chemical dependency treatment, and participated in employment opportunities while incarcerated that required a clean disciplinary record.  Dr. Scolatti had evaluated Grimshaw after his first conviction and the updated PSE reported that Grimshaw had matured considerably.

¶13    The District Court held a resentencing hearing on April 1, 2022.  Grimshaw recommended a sentence of 20 years MSP with ten years suspended consistent with the plea agreement the State offered prior to the first trial.  Grimshaw supported his recommendation with information in the PSE and had multiple witnesses testify on his behalf.  Grimshaw testified that he had been paying restitution since his first conviction and had complied with the terms of his release leading up to the second trial.

¶14    The State recommended the same sentence that it recommended after the first trial— 50 years MSP with 25 years suspended.  The State submitted T.G.'s victim impact statement that again asked the District Court to impose the maximum sentence.  T.G.'s letter explained the devastating impact the crime still has on her.  The letter asked the District Court to consider that Grimshaw had not taken a plea agreement and caused T.G. to testify at a second trial.  The State and the updated pre-sentence investigation report (PSI) noted the circumstances of the crime had not changed between the first and second trial.

¶15 Judge Christopher, who had sentenced Grimshaw in September 2017, sentenced Grimshaw to 50 years MSP with 30 years suspended, increasing the suspended term by ten years. Judge Christopher stated she was increasing the sentence because Grimshaw appealed his conviction, retried the case instead of accepting a plea agreement, his lack of remorse, the nature of the crime, impact on the victim, and safety of the community and T.G. In the written judgment she stated:

> The Defendant was found guilty and appealed. The Supreme Court remanded the case on a technicality. The State offered the Defendant a plea agreement, but [he] decided to try this case again, placing the victim in a situation to testify again.

## STANDARDS OF REVIEW

¶16 "We review evidentiary rulings for an abuse of discretion." *State v. Wilson*, 2022 MT 11, ¶ 8, 407 Mont. 225, 502 P.3d 679 (citation omitted). An abuse of discretion "occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Ellison*, 2018 MT 252, ¶ 8, 393 Mont. 90, 428 P.3d 826 (citations omitted). "We review de novo a district court's interpretation of the Montana Rules of Evidence." *Wilson*, ¶ 8.

¶17 We review a criminal sentence for legality. *State v. Coburn*, 2018 MT 246, ¶ 16, 393 Mont. 73, 428 P.3d 243 (citation omitted). We review de novo whether a district court violated a defendant's constitutional rights at sentencing. *State v. Redfern*, 2004 MT 277, ¶ 8, 323 Mont. 225, 99 P.3d 223 (citation omitted).

6

## DISCUSSION

¶18 *Issue 1: Whether the District Court abused its discretion by allowing the State to recall an expert witness who violated an exclusion order*

¶19 M. R. Evid. 615 states:

At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

¶20 Grimshaw argues the District Court erroneously held that Rule 615 prohibits a trial court from excluding expert witnesses.

¶21 "Evidentiary rulings based on the interpretation of statutes or rules present purely legal issues." *State v. Mont. Ninth Judicial Dist. Court*, 2014 MT 188, ¶ 7, 375 Mont. 488, 329 P.3d 603 (citation omitted). In construing statutes or rules, our role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶22 Rule 615 explicitly provides that at the request of a party or on its own motion, "the court *shall* order witnesses excluded so that they cannot hear the testimony of other witnesses." (Emphasis added). Rule 615 explicitly provides for three specific exceptions to a witness exclusion order. The only exception applicable to this case is Rule 615(3), which provides that an exclusion order does not apply to "a person whose presence is shown by a party to be essential to the presentation of the party's cause." A witness's status as an expert witness is not, by itself, an exception to the Rule. Regardless of the

7

nature of the witness, Rule 615(3) requires that a party show that the witness's presence is "essential to the presentation of the party's cause."

¶23 Federal caselaw interpreting the almost identical Fed. R. Evid. 615(3) provision proves persuasive and supports our conclusion. *Faulconbridge v. State*, 2006 MT 198, ¶ 51, 333 Mont. 186, 142 P.3d 777 (supporting our interpretation of M. R. Evid. 615(2) with federal caselaw). The Ninth Circuit declined to conclude that Fed. R. Evid. 615(3) always exempts an expert witness from an exclusion order because if the "'framers intended it, they would have said so, or added a fourth exception.'" *United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002) (quoting *Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 629-30 (6th Cir. 1978)).

¶24 The District Court erred by concluding that Dr. Vanino's status as an expert witness excluded her from the witness exclusion order. The State argues that even if the District Court erred, Grimshaw is still not entitled to reversal of his conviction because the error was harmless.[1]

¶25 "[T]he question as to whether a particular error is harmful or harmless depends on the facts of the case under review." *State v. Brodniak*, 221 Mont. 212, 222-23, 718 P.2d 322, 329 (1986), *overruled in part on other grounds by State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735. The State can establish that an error is harmless by "demonstrat[ing] that there is no reasonable possibility that the inadmissible evidence might have contributed to the conviction." *Van Kirk*, ¶ 47.

---

[1] The State also argues that Rule 615 does not apply to rebuttal witnesses. Because we conclude the District Court's error was harmless, we need not address this argument.

¶26 Grimshaw argues the State cannot prove there is no reasonable possibility that Dr. Vanino's rebuttal testimony did not contribute to Grimshaw's conviction. Grimshaw asserts Dr. Vanino's rebuttal testimony rendered his theory of the case unbelievable to the jury because of the weight jurors give expert testimony and the verbiage Dr. Vanino used when questioning the veracity of what Dr. Vanino described as Grimshaw's "regrettable sex defense."

¶27 The State responds by asserting Dr. Vanino's rebuttal testimony did not prejudice Grimshaw because Grimshaw was allowed to recall Dr. Zook to rebut Dr. Vanino's rebuttal testimony. The State contends the District Court's error is harmless because allowing Dr. Zook to listen to Dr. Vanino's testimony and rebut it eliminated any prejudice to Grimshaw.

¶28 The purpose of excluding witnesses from the courtroom is to prevent witnesses from fabricating their testimony or tailoring their testimony to the testimony of other witnesses. M. R. Evid. 615, MCA, *Annotations*, Comm'rs Note (2024); *see also* 1 Weinstein's Evidence Manual § 10.06 (2025) (excluding witnesses prevents "witnesses from hearing each other's stories so that inconsistencies in their testimony will be revealed"). Although the District Court erred by holding that Rule 615 categorically does not apply to expert witnesses, the purpose of excluding witnesses has little application to expert witnesses who only offer expert opinions and do not testify as a fact witness. *See Seschillie*, 310 F.3d at 1214 (explaining no "countervailing reasons to sequester [the expert]" existed because the expert was not a fact witness); *Morvant*, 570 F.2d at 629 ("We perceive little, if any, reason

9

for sequestering a witness who is to testify in an expert capacity only and not to the facts of the case."). Federal circuit courts have held failing to exclude an expert witness does not result in prejudice when the expert's opinion will not be "colored by accounts of prior witnesses" or when the expert's rebuttal testimony does not contradict their prior testimony. *Mayo v. Tri-Bell Industr., Inc.*, 787 F.2d 1007, 1013 (5th Cir. 1986); *Trans World Metals, Inc. v. Southwire Co.*, 769 F.2d 902, 911 (2d Cir. 1985).

¶29 Dr. Vanino was a blind expert who only testified in the abstract regarding the theories upon which Grimshaw relied. Even assuming, for the sake of argument, that Grimshaw may have been prejudiced by Dr. Vanino remaining in the courtroom before testifying on rebuttal, this prejudice was mitigated by the District Court allowing Dr. Zook to remain in the courtroom during Dr. Vanino's rebuttal testimony and then allowing Grimshaw to recall Dr. Zook to challenge Dr. Vanino's rebuttal testimony. Allowing Dr. Zook to rebut Dr. Vanino's opinion of the regrettable sex defense enabled Grimshaw to present expert testimony to a critical aspect of this case and ensure the jury could weigh Dr. Vanino's opinion against Dr. Zook's. *See State v. Garding*, 2013 MT 355, ¶ 33, 373 Mont. 16, 315 P.3d 912 (holding that limiting the defendant's expert's testimony constituted harmless error because the defendant's expert "was still allowed to present the most critical aspects of his testimony to the jury").

¶30 Both Dr. Vanino and Dr. Zook were called as blind expert witnesses, neither of whom testified to the specifics of this case. Grimshaw was given ample opportunity to challenge Dr. Vanino's testimony with his own expert and, in fact, as far as the competing

expert opinions, Grimshaw got the last word before the case went to the jury. We conclude there is no reasonable possibility that the error of allowing Dr. Vanino's rebuttal testimony might have contributed to Grimshaw's conviction. The District Court's error in allowing the State to recall Dr. Vanino after she remained in the courtroom during Dr. Zook's initial testimony was harmless. *Van Kirk*, ¶ 47.

¶31    *Issue 2: Whether the District Court violated Grimshaw's due process rights by increasing his sentence after retrial.*

¶32    Due process prohibits a court from vindictively enhancing a defendant's sentence after the defendant has successfully challenged a conviction. *State v. Bullplume*, 2011 MT 40, ¶ 18, 359 Mont. 289, 251 P.3d 114 (citing *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S. Ct. 2072, 2080 (1969)). A presumption of vindictiveness applies when the same judge who initially sentenced the defendant increases the sentence after reconviction following a successful appeal. *See State v. Forsyth*, 233 Mont. 389, 422, 761 P.2d 363, 384 (1988) (explaining the presumption of vindictiveness does not apply when a different judge sentences after reconviction); *State v. Santoro*, 2024 MT 136, ¶ 36 n.7, 417 Mont. 92, 551 P.3d 822 (citations omitted) (same). "To avoid a presumption of judicial vindictiveness, an increased sentence must be based upon objective information concerning identifiable conduct that occurred subsequent to the original sentence, and reasons supporting the sentence must be made part of the record." *Bullplume*, ¶ 18 (citations omitted).

¶33    Grimshaw argues the record developed at the sentencing hearing shows the District Court vindictively punished him for exercising his right to appeal. Grimshaw contends the

11

written judgment demonstrates vindictiveness as it explicitly identifies Grimshaw's appeal and choice to retry the case as a basis for the increased sentence. Grimshaw contends the District Court did not identify any objective evidence of new conduct or events that warrant increasing his sentence.

¶34 The State argues the resentencing hearing record demonstrates the District Court commented on Grimshaw's right to pursue a second trial on remand but did not actually consider Grimshaw's decision when sentencing Grimshaw. The State asserts the District Court properly increased the suspended term of the sentence because the sentence will ensure Grimshaw remains accountable to himself and completes rehabilitation before rejoining society.

¶35 The presumption of vindictiveness applies here because the same judge who initially sentenced Grimshaw resentenced him after he was reconvicted and increased the sentence imposed. *See Forsyth*, 233 Mont. at 422, 761 P.2d at 384. The District Court imposed a more burdensome sentence by adding ten years to the suspended term. *State v. Hanna*, 2014 MT 346, ¶ 38, 377 Mont. 418, 341 P.3d 629 (citation omitted) (concluding adding ten years of suspended time to a sentence increased the sentence as "suspended time is nonetheless sentenced time").

¶36 The District Court did not specify the basis for increasing the suspended term. The District Court opined at the resentencing hearing that the safety of the community constituted its primary concern, but it also found Grimshaw failing to express remorse

between trials constituted a "big issue for [it]." The written judgment states the following as one of the justifications for the increased sentence:

> [Grimshaw] was found guilty and appealed. The Supreme Court remanded the case on a technicality. The State offered [Grimshaw] a plea agreement, but decided to try this case again, placing the victim in a situation to testify again[.]

¶37 Grimshaw exercising his constitutional rights while pursuing his appeal does not constitute objective identifiable conduct that justifies increasing Grimshaw's sentence. Punishing Grimshaw for appealing his original conviction and exercising his right to a jury trial on remand violates due process. *State v. Jackson*, 2007 MT 186, ¶ 14, 338 Mont. 344, 165 P.3d 321 ("A court denies a defendant's due process rights by imposing a heavier sentence . . . as punishment for setting aside [the defendant's] original sentence."); *State v. Baldwin*, 192 Mont. 521, 525, 629 P.2d 222, 225 (1981) ("To punish a person for exercising a constitutional right is a basic due process violation.") (citations omitted). Imposing a harsher sentence because Grimshaw did not express remorse between trials infringes upon his constitutional right against self-incrimination as expressing remorse would have rendered his appeal meaningless. *See State v. Cesnik*, 2005 MT 257, ¶ 25, 329 Mont. 63, 122 P.3d 456 (holding "a sentencing court may not punish a defendant for failing to accept responsibility for the crime when that defendant has expressly maintained his innocence and has a right to appeal his conviction"). The District Court's statement at the resentencing hearing that it would not punish Grimshaw for exercising his constitutional rights does not convince us the District Court refrained from punishing Grimshaw for

13

exercising his rights particularly when considering the reasoning the District Court expressed in its written judgment.

¶38    The transcript of the resentencing hearing indicates the District Court misunderstood the due process requirements in resentencing.  The District Court reasoned it could resentence Grimshaw "as a brand-new case . . . based on all of the circumstances [it] had in front of [it]."  Due process requires the District Court to justify increasing a sentence on reconviction based on new information, conduct, or events that occurred after the court originally sentenced the defendant.  *See Bullplume*, ¶ 18; *Wasman v. United States*, 468 U.S. 559, 572, 104 S. Ct. 3217, 3225 (1984) (holding a district court "may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred *subsequent to* the original sentencing proceedings" (emphasis added)).

¶39    Relevant conduct or events that can rebut the presumption of judicial vindictiveness are those that shed "new light upon the defendant's life, health, habits, conduct, and mental and moral propensities."  *Pearce*, 395 U.S. at 723, 89 S. Ct. at 2079.  Relevant information "may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources."  *Pearce*, 395 U.S. at 723, 89 S. Ct. at 2079.

¶40    The record does not reflect the District Court increased the sentence because it found new information demonstrated the crime was more egregious or the impact more devastating to the victim.  The State and PSI stated the circumstances of the crime had not changed since the first trial.  The District Court received T.G.'s victim impact statement

14

that described the devastating impact the crime had, and would continue to have, on T.G. before the first sentencing hearing. The second impact statement submitted prior to the resentencing hearing reemphasized the trauma T.G. continues to suffer. The District Court could not lawfully increase Grimshaw's sentence under these circumstances. *State v. Knowles*, 2010 MT 186, ¶ 35, 357 Mont. 272, 239 P.3d 129 (holding prosecutorial vindictiveness occurred when the State increased the charges after mistrial without new factual evidence justifying the increase).

¶41 The District Court also reasoned that the sentence would protect the community and T.G. But the District Court did not identify any new information to reason that Grimshaw became more dangerous or needed more time to rehabilitate himself. The record indicates Grimshaw was completing his sex offender treatment program, abided by the rules while incarcerated, and had not misbehaved when released on bail prior to the second trial. The PSE completed after Grimshaw was convicted the second time also indicated that Grimshaw had completed chemical dependency treatment and had matured since he was evaluated after his conviction in September 2017. The dichotomy of character created by the crime Grimshaw was convicted of and the man described by the witnesses testifying on Grimshaw's behalf amounts to the District Court reconsidering the nature of the crime. Grimshaw's progress in treatment and his orderly behavior since first being sentenced do not warrant increasing the sentence due to safety concerns. *E.g.*, *Texas v. McCullough*, 475 U.S. 134, 144, 106 S. Ct. 976, 981-82 (1986) (holding the judge learning upon retrial that the defendant committed additional crimes upon his release "amply justified [the

15

defendant's] increased sentence"); *State v. Hubbel*, 2001 MT 31, ¶¶ 28-29, 304 Mont. 184, 20 P.3d 111 (holding the district court justified the increased sentence because the defendant had not made progress on rehabilitation programs), *abrogated in part on other grounds by State v. Hendricks*, 2003 MT 223, 317 Mont. 177, 75 P.3d 1268.

¶42 The record before us demonstrates the District Court's stated reasoning for imposing the increased sentence does not rebut the presumption that it vindictively increased Grimshaw's sentence. The District Court unlawfully punished Grimshaw for exercising his constitutional rights and did not rely on objective information relating to conduct that occurred after it originally sentenced Grimshaw as a basis for increasing Grimshaw's sentence.

¶43 Grimshaw requests that we reduce the suspended term of the sentence to 20 years as this would reflect the suspended term he received upon the first conviction.

¶44 The remedy we may administer for a partially illegal sentence varies based on the circumstances. *State v. Hicks*, 2006 MT 71, ¶ 44, 331 Mont. 471, 133 P.3d 206; *State v. Krum*, 2007 MT 229, ¶ 23, 339 Mont. 154, 168 P.3d 658. We have generally remanded "with instructions to strike the offending provision" when "the illegal portion of a sentence relates to a condition of a suspended sentence or a sentence enhancement." *Hicks*, ¶ 44 (citing *State v. Heath*, 2004 MT 58, ¶ 49, 320 Mont. 211, 89 P.3d 947). We prefer to remand for resentencing when the "illegal portion of a sentence [1] affects the entire sentence or [2] we are unable to determine what sentence the trial court would have imposed under a correct application of the law." *Hicks*, ¶ 44 (citation omitted).

¶45 The State and PSI do not contend new evidence introduced at the second trial demonstrated the crime had been more egregious than presented at the first trial. The record reflects that Grimshaw did not become more violent or prone to reoffend since he was first sentenced. As we recognized above, the record indicates that Grimshaw was completing treatment programs, had not received disciplinary writeups for misconduct, and matured since he was originally sentenced. The record does not reflect that new events, conduct, or information came to light since Grimshaw was first sentenced that justify increasing his sentence.

¶46 We reverse and remand the sentence only with respect to the length of the suspended term. The judgment should be amended to change Grimshaw's term of incarceration from 50 years MSP, with 30 years suspended to 40 years MSP, with 20 years suspended. The remaining terms and conditions of the judgment remain unchanged.

## CONCLUSION

¶47 The District Court's error of allowing Dr. Vanino to testify in rebuttal despite the witness exclusion order was harmless. The District Court violated Grimshaw's due process rights by vindictively increasing the sentence after he was reconvicted. We affirm in part reverse in part, and remand with instructions to amend the judgment consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

17

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE